PARIS v. SCOTT.

1. SPECIFIC PERFORMANCE—CONTRACT TO LEAVE PROPERTY BY WILL—
   TESTIMONY VIEWED WITH CAUTION.
   Testimony concerning oral agreement to leave property by will
   must be viewed with great caution and greater weight should
   attach to acts of alleged contracting parties.

2. SAME—FOSTER PARENTS—EVIDENCE—INTENTION.
   Evidence in case where plaintiff sought specific performance of
   an alleged contract to leave him property by wills of his foster
   parents *held*, mere expressions of intention and insufficient to
   establish contract binding upon surviving parent.

Appeal from Van Buren; Warner (Glenn E.), J. Submitted April 13, 1934. (Docket No. 105, Calendar No. 37,768.) Decided June 4, 1934.

Bill by Charles F. Paris against Nellie Paris Scott, individually and as administratrix of the estate of Fred R. Paris, deceased, and Charles E. Anderson, administrator of the estate of Alice G. Paris, deceased, for specific performance of an alleged contract to leave property by will. Bill dismissed. Plaintiff appeals. Affirmed.

*Harry C. Howard* and *William J. Howard,* for plaintiff.

*E. D. Ayers* and *David Anderson,* for defendant Scott.

FEAD, J.   This is a bill for specific performance of alleged agreement by Fred and Alice Paris with plaintiff to leave him their property by will and of contract to the same effect between them for his benefit.  The evidence did not support the former and the court held the latter was not proved.

About 1890 Fred Paris, a Chicago broker, was divorced from his first wife.  Defendant Nellie Scott was the only issue of the marriage.  Nellie went west with her mother.  Fred later married Alice.  For some time Nellie visited her aunt in Chicago yearly and, on such occasions, saw her father.  She had no contact with her stepmother and did not stay at her home.  She last saw her father in 1907 and thereafter had practically no correspondence with him.

In 1899 Fred and Alice Paris took plaintiff from an orphan asylum into their home, under contract to keep him until he was 16 years of age and, with his consent, two years more.  They became attached to him and he continued to reside with them until he made a home of his own.  Plaintiff claimed that when he was about 10 years of age they agreed they would will him their property if he should continue to be a good son to them.  The claim was not proved. In 1905 they had him baptized as Charles Fielding Paris, their son.

In 1912, when plaintiff was 23 years old, he decided to marry and wanted lawful use of the Paris name.  Alice did not like his choice of wife.  Adop-

tion proceedings were had but, at Alice's insistence, plaintiff executed an instrument disclaiming all right to inherit from either of his adopted parents. Alice attached the disclaimer to the adoption papers and it was so kept in a safety deposit box to the time of her death. All parties believed plaintiff was legally adopted. After the death of both parents, however, a decision of the Illinois supreme court was discovered holding void adoption proceedings of a person over 21 years of age.

In 1914 Fred Paris retired from business and moved upon a farm in Michigan. While paying alimony to his first wife, Alice had required him to pay her a like amount. Both contributed to the purchase of the farm, the title to part of which was taken in Fred and part in Alice. They continued to live there until the time of their death.

In 1929 each made a will leaving all his estate to the other and executed deed of his real estate to the other. The wills and deeds were kept in a safety deposit box. The scrivener testified that they told him they had agreed to do this and that the survivor was to leave his remaining estate to plaintiff. There was further testimony that after the will was made one or the other told friends they had agreed to will their property to each other and the survivor was to leave the residue to plaintiff.

Alice died October 9, 1931. Fred died 17 days later. After Alice's death Fred found the adoption papers in the safety deposit box with inheritance disclaimer by plaintiff attached. He also found a letter from Alice. He and Charles destroyed both disclaimer and the letter and their contents are not before us. The probate of Alice's estate was begun. In a few days Fred was taken sick and sent for the scrivener who drafted the wills. He talked with him

about drawing a will, as he and Mrs. Paris had agreed, leaving the property to plaintiff but giving his daughter $10 so she could not attack the will. He also told of the letter, which he called a "curse letter" and which stated in substance that:

"If any of the blood of the Paris' received any of her property in any way, her curses would be upon them until their dying day."

Fred told the scrivener the letter had crushed him, he did not know what he had done to deserve it, and he did not want to do anything that would leave anybody's curse upon him. He cried a great deal about the letter. He asked the scrivener how the property would descend if he did not make a will and was told that plaintiff and Nellie would take equally. He said he wanted to think over the matter of a will and asked the scrivener if he would come back when he was sent for. He did not send for the scrivener again but died intestate three days later.

The testimony preponderates that Fred and Alice Paris intended plaintiff to take their estate on death of the survivor. But the question is whether they contracted to that effect. The gist of the action is that a binding contract was made between them so that failure of Fred to make the intended will was a fraud upon Alice, who had performed her part of the agreement.

In cases of this kind, the testimony of witnesses must be viewed with great caution, because of the frailties of memory, the improbability of repeating the precise language of a person since deceased, of fairly expressing the full state of mind of such person, and because the change of a word may mean the difference between a binding contract and a mere expression of intention. Care must also be taken.

lest the court, out of considerations of equity or sympathy, make a contract for the parties where none existed, even though such contract might or would express their desires. Where the alleged contracting parties cannot testify, their acts loom large as compared with what witnesses say they said.

Without attacking the credibility of any of the witnesses, the case presents persuasive indices that the conversations relied upon were merely expressions of intention rather than of a contract which Fred and Alice Paris considered binding on them.

The incident of the disclaimer on adoption of plaintiff, its retention by Alice to the time of her death, and the "curse letter" indicate that Alice would not be likely to bind herself to leave her property to plaintiff if, for instance, he should marry a woman whom she did not like. The curse letter demonstrates the strength of her feelings and, if there had been a positive agreement that Fred should will his property to plaintiff, it is incredible that the letter would not have mentioned it. When Fred was talking of his will after her death, it is obvious he did not recognize a binding obligation to her to leave his property to plaintiff because, in spite of his intense distress at the letter, he was still interested in learning the effect of intestacy and wanted further time to think over the matter of making a will.

In our opinion, the court reached the right conclusion and the decree dismissing the bill is affirmed, with costs.

Nelson Sharpe, C. J., and Potter, North, Wiest, Butzel, Bushnell, and Edward M. Sharpe, JJ., concurred.