### ZACK *v.* GUNDERSON.

SPECIFIC PERFORMANCE—CONTRACTS FOR FILIAL SERVICE—WILLS.
Decree for plaintiff in suit for specific performance of deceased's oral contract to convey real and personal property to her in return for leaving remunerative employment and rendering filial service to him during remainder of his lifetime and which was fully performed by her, notwithstanding devise of same property to her by his will, is affirmed by equally divided court.

Appeal from Gogebic; Driscoll (George O.), J. Submitted April 10, 1934. (Docket No. 80, Calendar No. 37,689.) Decided June 21, 1934.

Bill by Elizabeth Zack against Carl E. Gunderson, executor of the estate of Joseph Davis, deceased, for specific performance of agreement to convey property. Decree for plaintiff. Defendant appeals. Affirmed by an equally divided court.

*Edward W. Massie,* for plaintiff.

*Belmont Waples* (*Humphrey & Humphrey,* of counsel), for defendant.

NELSON SHARPE, C. J. Joseph Davis, an old time resident of the city of Ironwood, passed away on April 23, 1933. His wife had died on August 21, 1926. They had no children. On October 21, 1932, Mr. Davis had executed his last will and testament, in which he devised and bequeathed to the plaintiff his home in the city and all of the personal property therein and certain certificates of stock in an insurance company. It was duly admitted to probate, and the defendant, Carl E. Gunderson, qualified as executor thereof.

The bill of complaint herein was filed on June 16, 1933. In it the plaintiff alleges that she is the grandniece of the deceased; that in the year 1928 an oral agreement was entered into between her and the deceased, under which, in consideration of her leaving the employment in the city of New York in which she was then engaged and coming to the home of the deceased and living with and rendering filial service to him during the remainder of his lifetime, he would convey to her the home in which he then lived and all the personal property belonging thereto, and

that she fully performed said agreement on her part but deceased neglected to make such conveyance to her during his lifetime. In her prayer for relief she asks that the defendant, as executor, be ordered to specifically perform the said agreement. The answer is a denial of the relief sought.

The property described in the bill of complaint is the same as that devised and bequeathed to plaintiff in the will. It appears, however, that the deceased, in 1928, was possessed of a considerable amount of property besides his home and its furnishings, but that at the time of his decease he had an indebtedness which will probably result in the executor's being required to dispose of at least a part of the property devised to plaintiff to satisfy the same, and the purpose of the plaintiff is to secure it relieved therefrom by specific performance of the claimed oral agreement.

To entitle the plaintiff to recover, the proofs submitted must be convincing that the testator during his lifetime agreed that he would convey this property to her in consideration of the service to be rendered by her and that she fully performed on her part. The trial court so found, and entered a decree as prayed for in the bill of complaint, from which the defendant has taken this appeal.

It is undisputed that the testator after the death of his wife felt very lonely and depressed, and was somewhat addicted to drinking. He was then about 70 years of age. He tried to get plaintiff's mother, his niece, who lived in Milwaukee, to come and live with him, but she declined. He then asked her if the plaintiff might not be induced to do so. While the plaintiff was not permitted to testify to the reason therefor, it does appear that she came to the home of the testator in September, 1928, and lived with him therein, except on a few occasions when she

visited others, until his death on April 23, 1933. The house was quite large and roomy, and, while a maid was employed to assist her, she took charge of it and entertained and looked after him as a daughter would do. She had been in New York for about four years, and when she left there was earning about $150 a week in theatrical employment.

Two old friends of the deceased, Adolph E. Schwefel, an attorney, and Paul Muenzberg, both residents of Milwaukee, visited him at his cottage on Manitowish Lake on September 30, 1928. Mr. Schwefel testified that deceased then told him that during the lifetime of his wife they had expressed a desire to adopt the plaintiff, but that her father would not consent thereto; that she "had come there now and that she was of a vivacious disposition, she could relate things, read things to him, and he has society at home and it was more of a home to him. Then he said that he had made an agreement with Betty (the plaintiff) that she should stay with him the rest of his life, and that he had deeded to her the homestead and everything that was in it;" that there was some talk about the effect of a deed. "He did not indicate in any manner that he had changed his idea about giving her the deed. He said that he wanted her to have that. That was satisfactory to him. He was elated with the arrangement. He was more than pleased. He repeatedly mentioned that it is a home to him again now that she was there now; that he can go home and forget his business troubles and feel more refreshed, and that she is a great solace to him; that he can talk to her, and she reads to him. Well, he went into a great deal of detail;" that he also said, "I am approximately worth $70,000." Mr. Muenzberg testified to the same effect. This conversation was in the presence of the plaintiff.

Frances Wilcox and her sister, Jeanette Wilcox, testified that while visiting at the home after the arrival of the plaintiff the deceased told them that he was giving her the home, and its contents; that he took a legal paper out of his pocket, and said it was a deed, and that the home and everything in it was hers, and put the paper back in his pocket.

Hazel Zack, plaintiff's mother, testified that the deceased asked her to use her influence to get the plaintiff to leave the theatrical business in New York, and after she came he "told me of this agreement that had been established between him and Betty, that she would remain with him. He told me she was to have the home and its contents for that."

The plaintiff was not permitted to testify as to the arrangement under which she came to the home of the deceased and lived with him for about five years prior to his death. It seems clear, however, that she would not have given up her remunerative employment in New York without some agreement for compensation to her for the service to be rendered. The home was assessed at $3,250. The value of the furnishings is not disclosed, but it seems apparent that plaintiff made a financial sacrifice when she left New York and came to live with the deceased.

In our opinion the agreement here sought to be enforced is clearly established. If the deceased had executed a deed to her, as stated by him, he doubtless destroyed it after his conversation with attorney Schwefel relative to its immediate effect. He doubtless was of the opinion that the provision in his will secured to her all that the deed would have given her. But, under the circumstances, she is entitled to enforce the agreement, and may not be required to take under the will.

There is some evidence that the deceased at times made presents to her. Her acceptance of them in no way affected her rights under the agreement. Neither does the fact that she and her mother delivered the will, after his decease, to the judge of probate. It was in the home, and it was their duty to do so.

The decree is affirmed, with costs payable out of the estate.

POTTER, BUTZEL, and EDWARD M. SHARPE, JJ., concurred with NELSON SHARPE, C. J.

WIEST, J. (*dissenting.*)  I am not in accord with the opinion of the Chief Justice.

The evidence is persuasive that plaintiff was to have the house and furnishings by will and was content therewith, until she was informed that payment of debts of the deceased came ahead of her devise.

Plaintiff and her mother presented the will for probate and, upon hearing, it was admitted to probate.

The executor of the estate testified:

"Apart from the home and contents' I have not found enough property in the Joseph Davis estate to pay the debts which have now been filed against it."

Mr. Davis died April 23, 1933. The will was executed October 21, 1932.

The attorney who drew the will testified:

"Mr. Davis said he wanted me to draw his will and I had, or received then, a piece of paper with a pencil and he told me what disposition he wished made of his property. Miss Zack was present during the entire time and aided him in giving me the names and addresses of the various several beneficiaries. In the course of that he said that he wanted to leave to her the house and contents.  *  *  *  I

drew the will and went back there to his residence the second day afterwards with the will already drawn and ready for execution. I had the original and two carbon copies of the will as drawn. I gave one to him, one to her and read the third. I read it through as it was executed, including 'after the payment of my just debts and funeral expenses;' everything in the will from start to finish. As I started to read it I said to him, 'If there is anything here which isn't now just the way you want it, stop me as I read it over; do not wait until I get through; and if necessary the will will be redrawn, for I want to have it express your present wishes as to the disposition of your property.' When I finished reading it all through he said, 'I think that is all right.' He said to her, 'Wasn't that it?' and she said, 'It is exactly the way you told Mr. Waples when he was here.' * * * Miss Zack did not make any claim or say anything to the effect that the house or contents were already hers. There was no claim made by her at that time that she owned the house. Mr. Davis did not say anything to me in her presence to the effect that she owned the house or its contents.''

Plaintiff testified that she was not present when the will was discussed or when it was executed.

I think Mr. Davis at one time intended to give plaintiff a deed but, after talking with the attorney from Milwaukee, concluded to devise the property by will.

I am of the opinion that plaintiff must take under the will and may not have specific performance of the alleged contract and consequent exclusion of creditors of the deceased.

The decree should be reversed and the bill dismissed, with costs to defendant.

NORTH, FEAD, and BUSHNELL, JJ., concurred with WIEST, J.