McCLELLAN v. MOORE.

1. EVIDENCE—ADMISSION OF DECEDENTS—CORROBORATION.
    Admissions of one deceased should be received with caution and are of little value without corroboration.

2. SPECIFIC PERFORMANCE—REMEDY OF GRACE.
    Specific performance of an oral contract to devise property is a matter of grace, not of right, and whether such relief will be granted is determined by peculiar circumstances of each case.

3. Sᴀᴍᴇ—Eǫᴜɪᴛʏ.

Specific performance is not always a matter of legal right, but is based more or less on the equitable consideration, and is only granted where a clear case for equitable relief is established and where it is shown that by failure to enforce such remedy, hardships and clearly proven damages will accrue to the parties seeking relief.

4. Sᴀᴍᴇ—Eᴠɪᴅᴇɴᴄᴇ—Oʀᴀʟ Cᴏɴᴛʀᴀᴄᴛ ᴛᴏ Dᴇᴠɪsᴇ Pʀᴏᴘᴇʀᴛʏ.

Decree dismissing bill for specific performance of an alleged oral contract to leave plaintiffs all of deceased's property in return for moving from Illinois to farm in Michigan and caring for deceased is affirmed under record presented.

Appeal from Allegan; Miles (Fred T.), J. Submitted June 19, 1935. (Docket No. 61, Calendar No. 38,344.) Decided September 9, 1935.

Bill by Lewis E. McClellan and wife against Myron B. Moore, individually and as executor of the last will of Charles L. Cale, deceased, and others for specific performance of a parol contract. Decree for defendants. Plaintiffs appeal. Affirmed.

*Clare E. Hoffman (Carl E. Hoffman* and *Leo W. Hoffman,* of counsel), for plaintiffs.

*Harry Pell,* for defendants.

Bᴜsʜɴᴇʟʟ, J. Plaintiffs appeal from a decree dismissing a bill of complaint in which a decree was sought determining them to be the sole owners of the property of Charles L. Cale, deceased, and that the executor be ordered to specifically perform an oral contract between themselves and the deceased. It is claimed the deceased agreed to give them all of the property of which he might die possessed, if they would leave their home in Illinois, come to Allegan, Michigan, and go upon his farm, cultivate the same, make a home for him and pay his funeral and last

illness expenses, including markers on his grave and that of his deceased wife. A number of parties testified in behalf of plaintiffs that the deceased talked to them about such an arrangement having been made with the McClellans.

A copy of a lost, revoked will, executed April 12, 1930, was introduced in which the deceased declared:

"I desire to state that the reason I give all my estate as stated in item (1st) of this, my will to Mr. and Mrs. McClellan is because they and each of them have covenanted and agreed with me to support and maintain and provide for me and nurse me in sickness and provide doctor to attend me, and pay all the expenses incident to my care and maintenance during the remainder of my natural life, either on the farm premises or any other place that I may desire to live. They are to provide two suitable monuments and footstones for each of the graves for my deceased wife Lucy and myself," etc.

Defendants, who are the executor and legatees of a will executed about 20 days before the testator's death, dispute the existence of the claimed agreement and say the parties were engaged in a joint enterprise to farm the property. A lease signed by plaintiffs and decedent October 10, 1929, was introduced which provided that each should furnish one-half the stock, etc., and both families should be supported by the farm. Mrs. Cale, who died in December, 1929, did not sign the lease. The later will was silent as to the McClellans and left the residue of the estate to a sister.

Plaintiffs moved to the farm in March of 1930, while Mr. Cale continued working in Illinois as a locomotive engineer until his retirement because of age on June 28, 1930. He then came to the farm and lived with the McClellans until his death July 19, 1931.

The first will, offered for probate July 22, 1931, was dismissed after the second will was presented August 24, 1931. Plaintiff Lewis McClellan then filed a claim against the estate for services rendered and moneys paid for taxes, farm supplies and on an insurance policy of the deceased, which claim was allowed by the commissioners on claims on July 1, 1932, without notice or testimony on either side in the sum of $1,500. Some of the probate court journal entries are:

November 2, 1932—"Petition for order directing payment of the McClellan claim." November 15th—"Order for executor to appear to show cause why he has not paid McClellan claim." December 31st—"Order that executor pay debts within 20 days." February 2, 1933—"Petition for order citing executor to show cause for failing to pay McClellan claim and to remove executor." March 10th—"Order denying petition" and "order denying further hearing by commissioners on claim."

The executor on March 16, 1933, filed a notice of appeal to the circuit court, and April 1st, an order was entered allowing a delayed appeal. April 10th, the estate filed a set-off and counter-claim against Lewis McClellan and June 29, 1933, the McClellans filed their bill for specific performance; November 9th, they moved to consolidate the probate appeal with the chancery cause or dismiss the appeal. November 18th the motion was denied. Thereafter the court, sitting without a jury, and claimant offering no proofs, the claim, set-off and counter-claim were denied. Testimony was taken in the chancery cause May 9, 1934, and the decree dismissing the bill and canceling the lease was entered August 18, 1934.

Defendants argue that since plaintiffs withdrew their objections to the last will and filed a claim

against the estate, they made an election of remedies; that from July 19, 1931, until June 29, 1933, they acquiesced in the probating and possible distribution of the estate; that the real property has passed to the devisees subject to the payment of debts and expenses of administration in the event the personalty is found insufficient, and that the judgment on the claim is *res judicata* of matters contained in the bill of complaint.

We have taken from the record and the five briefs sufficient to indicate the claims of the respective parties, and have examined the rather comprehensive testimony and exhibits offered by both sides. We recently stated in *Wild* v. *Wild,* 266 Mich. 570, 572:

"Proof of admissions is concededly the most unreliable known to the law. It should be received with caution and subjected to careful scrutiny as no class of evidence is more subject to error or abuse. Witnesses having the best motives are generally unable to state the exact language of an admission and are liable by the omission or the change of words to convey a false impression of the language used. No other class of testimony affords such tendencies or possibilities for unscrupulous witnesses to torture the facts or commit open perjury as it is often impossible to contradict their testimony at all or at least by any other witness than the party himself. * * *

" '*A fortiori* where the admission is that of one deceased the caution should deepen into suspicion for reasons that are obvious and without corroboration is of little value.' 2 Jones, Commentaries on Evidence, § 295."

The relief sought by plaintiffs, that of specific performance of an oral contract to devise real property, is a matter of grace not of right, and the question of whether such relief will be granted is determined by the peculiar circumstances of each case. *Denby* v. *Dorman,* 261 Mich. 500.

In *Bryll* v. *Mistecki,* 259 Mich. 61, we said:

"Specific performance is not always a matter of legal right. It is based more or less upon the equitable consideration and is only granted where a clear case of equitable relief is established and where it is shown that by a failure to enforce specific performance, hardships and clearly proven damages will accrue to the parties seeking relief."

Our observations there are somewhat applicable here:

"The rule thus stated may well be applied with greater strictness against defendants' claim, as here asserted, when they permitted more than two and a half years to elapse after entry of decree before bringing their appeal to a hearing in this court."

In the case at bar we have on the one hand plaintiffs' actions in moving from Illinois to Michigan and what they did on the farm, the statements of the decedent in the first will as to the agreement, supported by those who testified as to the admissions of decedent. On the other hand, we have the written lease, the revocation of the first will, and the contradictory language of the second, the inconsistent acts of Lewis McClellan, the dismissal of the petition to probate the first will, acquiescence in the allowance of the second, the claim and steps to enforce its payment, compliance with the spirit of the lease and irreconcilable inconsistencies in the testimony.

The trial *de novo* here does not persuade us that "a clear case of equitable relief is established." *Bryll* v. *Mistecki, supra.*

The decree is affirmed, with costs.

POTTER, C. J., and NELSON SHARPE, NORTH, FEAD, WIEST, BUTZEL, and EDWARD M. SHARPE, JJ., concurred.