## KING *v.* LUYCKX.

1. SPECIFIC PERFORMANCE—ORAL CONTRACT TO CONVEY PROPERTY BY WILL.

To warrant decree specifically enforcing oral contract to convey property by will, there must be something more than a mere unexecuted intention to make a will, there must be a meeting of minds, agreement based on sufficient consideration, clearly proven, and such acts of part performance as to remove parole agreement from operation of statute of frauds (3 Comp. Laws 1929, § 13411).

2. SAME—REMEDY OF GRACE.

Remedy of specific performance is matter of grace rather than of right, and whether it will be granted is determined by the circumstances of each case.

3. Same—Attorney and Client—Evidence.

    In suit for specific performance of an oral contract to make a will, testimony of deceased's attorney that deceased had told him that plaintiff had agreed to remain and conduct coal business and look after her personal interests and that she wanted plaintiff to have coal business and property on which it was located after her death, even if admissible, *held*, not to establish a contractual obligation to make a will.

4. Same—Oral Contract to Convey Property by Will—Testimony Viewed with Caution.

    Testimony concerning oral agreement to leave property by will must be viewed with great caution because of frailties of memory, improbability of repeating precise language of deceased and expressing full state of mind of such person and greater weight is given to the acts of alleged contracting parties.

5. Evidence—Admissions of Decedents—Corroboration.

    Admissions of one long since deceased should be received with caution and are of little value without corroboration.

6. Specific Performance—Oral Contract to Convey Property by Will—Evidence—Intent—Burden of Proof.

    In suit by manager of coal company against heirs of owner for specific performance of alleged oral contract to make a will and leave plaintiff an entire coal business and property on which it was located, under evidence that manager secured a 10-year extension of lease for his company three days before death of alleged testatrix which was two months before expiration of lease and her attorney had nearly completed will for testatrix leaving but a controlling interest in the business and other evidence, some of which shows discrepancies demonstrating treacheries of memory in the course of a number of years, *held*, at most to disclose but an intention to make a will and insufficient to sustain plaintiff's burden of proving oral contract to make a will.

Appeal from Wayne; Keidan (Harry B.), J.  Submitted April 15, 1937.  (Docket No. 15, Calendar No. 39,016.)  Decided May 21, 1937.  Rehearing denied June 29, 1937.

Bill by Harold N. King against Helen Aylward Luyckx and Edmund T. Luyckx, administrator of

the estate of Elizabeth Aylward, deceased, for specific performance of an oral contract to make a will. Bill dismissed. Plaintiff appeals. Affirmed.

*Atkinson & O'Connor* (*Van Dyke & Sloane,* of counsel), for plaintiff.

*Henry C. L. Forler* (*Monaghan, Crowley, Clark & Kellogg,* of counsel), for defendants.

BUSHNELL, J. Appellant filed a bill in equity for the specific performance of an oral contract to make a will. He sought a decree requiring defendant Helen Aylward Luyckx to convey certain real property, and directing defendant Edmund T. Luyckx, as administrator of the estate of Elizabeth Aylward, deceased, to transfer 400 shares of the capital stock of the R. L. Aylward Coal Company, a Michigan corporation. All of this property was owned by Elizabeth Aylward at the time of her death. At the time the alleged oral contract was made, plaintiff was employed by the coal company as its manager under an unexpired, 10-year written contract. It is his claim that Miss Aylward agreed that in consideration of his continuance as manager of the business after the expiration of this contract, and so long as she might live, she would will him all this property, which represented all her interest in the coal company.

After testimony was taken in the circuit court, a decree was entered dismissing plaintiff's bill. Some of the background of the present litigation may be found in the following reported cases: *In re Aylward's Estate,* 243 Mich. 9; *R. L. Aylward Coal Co. v. Luyckx,* 261 Mich. 394; and *Luyckx v. R. L. Aylward Coal Co.,* 270 Mich. 468. The bill of complaint in the instant case was filed shortly after our

determination of *R. L. Aylward Coal Co.* v. *Luyckx, supra,* which case involved an alleged lost will and testament of Miss Aylward.

The legal principles applicable to the enforcement of oral agreements of this nature are set forth in *Van Houten* v. *Vorce,* 259 Mich. 545. We said in that case:

"There must be something more than a mere unexecuted intention to make a will. There must be a contract, a meeting of minds, an agreement based upon a sufficient consideration, clearly proven, and such acts of part performance as to remove the parol agreement from the operation of the statute of frauds (3 Comp. Laws 1929, § 13411)."

Specific performance of an oral contract to convey or devise real property is a matter of grace and not of right. The question of whether such relief is to be granted must be determined by the circumstances of each case. *Denby* v. *Dorman,* 261 Mich. 500, 505.

In this trial *de novo,* decision rests upon whether there was sufficient proof of the claimed oral contract. Mr. Frank W. Atkinson, an attorney, testified for the plaintiff. He had been retained by Miss Aylward to try the contest of the will of Mary Aylward (See *In re Aylward's Estate, supra*). Mary Aylward was the mother of Elizabeth Aylward and the grandmother of Helen Aylward Luyckx, defendant herein. The will contest was terminated by the denial of a rehearing in October of 1928, and Mr. Atkinson concluded the matter in January or February of 1929 when the legacy was paid to Helen. He again represented Miss Aylward in May of 1929 in connection with the examination of an abstract of title, as a result of which lawsuits

were begun by him and were not terminated until 1931. He stated that after 1931,

"I did not transact any further business for Elizabeth Aylward until she consulted me prior to her death about preparing a will for her. She first consulted me within a year of her death and consultations with her in regard to the will continued practically up until the time of her death."

Over objection of defendants' counsel that such testimony pertained to privileged communications, Mr. Atkinson was permitted to testify to certain conversations he had with the deceased during social visits with her from February to May of 1929. He stated that the coal business was almost invariably the subject of discussion, and that Miss Aylward told him that Harold King was going to remain in the business as long as she lived. At that time, Elizabeth Aylward had already given King a one-half interest in the business, and it is the testimony of Mr. Atkinson that she said:

" 'I am content now, because after all that trouble, Mr. King has agreed to remain and conduct this business in the same way that he had before, and to look after my interests and my personal interests, as long as I live and when I die, the business and the property on Fort street will be Mr. King's.' * * * And she stated later on, when she told me that she had agreed that King was to have the coal property and the stock, that she did not want Mrs. Luyckx to have any of her property. I suggested that if that was the understanding, that she should have her affairs fixed so that they would be carried out; and she said that Judge Hally had attended to that. She did not use legal phrases and say, 'in consideration of this, I have agreed to do this, and in consideration of that, Mr. King has agreed to do that.' "

Passing the question of the admissibility of Mr. Atkinson's testimony and treating it all as admissible, we do not think that it establishes a contractual obligation. Our observations in *Paris* v. *Scott*, 267 Mich. 400, are applicable to the situation presented by this appeal. We said in that case at page 403:

"In cases of this kind, the testimony of witnesses must be viewed with great caution, because of the frailties of memory, the improbability of repeating the precise language of a person since deceased, of fairly expressing the full state of mind of such person, and because the change of a word may mean the difference between a binding contract and a mere expression of intention. Care must also be taken lest the court, out of consideration of equity or sympathy, make a contract for the parties where none existed, even though such contract might or would express their desires. Where the alleged contracting parties cannot testify, their acts loom large as compared with what witnesses say they said.

"Without attacking the credibility of any of the witnesses, the case presents persuasive indices that the conversations relied upon were merely expressions of intention rather than of a contract which Fred and Alice Paris considered binding on them."

We also said in *Wild* v. *Wild,* 266 Mich. 570, 572:

"Proof of admissions is concededly the most unreliable known to the law. It should be received with caution and subjected to careful scrutiny as no class of evidence is more subject to error or abuse. Witnesses having the best motives are generally unable to state the exact language of an admission and are liable by the omission or the change of words to convey a false impression of the language used. No other class of testimony affords such

tendencies or possibilities for unscrupulous witnesses to torture the facts or commit open perjury as it is often impossible to contradict their testimony at all or at least by any other witness than the party himself. 2 Jones, Commentaries on Evidence, § 295.

" '*A fortiori* where the admission is that of one deceased the caution should deepen into suspicion for reasons that are obvious and without corroboration is of little value.' 2 Jones, Commentaries on Evidence, § 295.''

The record shows that on January 28, 1932, three days prior to the death of Miss Aylward, she executed a renewal lease for a further period of 10 years upon the real estate in question, which was then occupied by the corporation for its coal yard, notwithstanding the fact that the lease then in existence did not expire until September 1, 1932. According to its terms, the lessee was not required to exercise its option of renewal until the 1st day of April, 1932. The renewal of this lease was drawn by Mr. Atkinson and he witnessed the instrument. Plaintiff, Harold N. King, executed this document on behalf of the R. L. Aylward Coal Company, the lessee. The natural query is, that if King, on January 28, 1932, had an agreement with Elizabeth Aylward under the terms of which he was to receive her entire stock holdings in the lessee company, as well as the title to the real estate, why was it deemed necessary that a 10-year extension of the lease be secured at that time?

Mr. Atkinson had been requested by Miss Aylward to prepare a draft of her last will and testament, and he said that at the time Miss Aylward died, the draft was completed with the exception of writing in the specific amounts of two bequests. He testi-

fied that Miss Aylward died on Monday and that the will was completed with these two exceptions on the preceding Saturday. The draft of this proposed will was received in evidence and it shows that plaintiff was to receive one-half of the coal company stock owned by Miss Aylward and an undivided one-half interest in the realty. Mr. Atkinson was questioned about the discrepancy between the draft and the claimed oral agreement; we quote his replies to certain questions propounded by the trial judge:

"*The Court:* Right along that line, Mr. Atkinson, just as a matter of information, when you testified with regard to the provision of this will that you drew up before her death, you had in mind the agreement that she told you she had made between herself and Mr. King?

"*A.* Yes, I did, your honor.

"*The Court:* Well, with that in mind, I ask you whether such an agreement as you claimed was made with her was irrevocable?

"*A.* I think so, as a matter of law.

"*Q.* If you knew as a matter of law when the agreement was made that it was irrevocable, why did you allow her to disregard the agreement?

"*A.* She wanted the will made that way. There had been a change in the situation between herself and the Luyckx family. She was interested in Mrs. Luyckx's children. She looked on Harold King in the same way as she had Dick, the same as if they were brother and sister. I knew from my knowledge of the history of the coal company and the Aylward family and of Harold King's connection with it, that the paramount thing that he wanted to accomplish and that they all wanted to accomplish was his control of the coal business. It was my honest belief that so long as Mrs. Aylward carried her agreement with Harold King out substantially so that he would control this coal business and

this property, that he would have no objection to her giving to these children a part of the real estate. * * *

"*The Court:*    As I understand it, you didn't tell her as a matter of law she could not properly break this agreement?

"*A.*   I didn't tell her in so many words, your honor, because she herself called my attention to the fact that it was not strictly in accordance with her agreement, and asked me if I thought King would object.

"*The Court:*    Well, all right."

Mr. Atkinson further testified that after the will contest, Judge P. J. M. Hally, personal counsel for Miss Aylward, called him and suggested that he visit her. Mr. Atkinson did not conclude the will contest until 1928; the testimony developed the fact that Judge Hally died in 1926. In explaining this apparently honest error, Mr. Atkinson stated that the occurrence took place over seven years ago and "the picture itself in some particulars was probably a little confused in my mind." This treachery of memory might well have affected Mr. Atkinson's recollection of other important incidents in the formation of the alleged oral contract, which also took place the same number of years before he was called upon to testify in the instant case. We direct attention to this phase of the testimony for the purpose of emphasizing the rule stated in *Paris* v. *Scott, supra,* and applied in comparable terms in *Wild* v. *Wild, supra; Zack* v. *Gunderson,* 268 Mich. 88; *Moyer* v. *Hafner,* 272 Mich. 52; and *McClellan* v. *Moore,* 272 Mich. 630.

Bernard H. Johnson, a former vice-president of the Peninsular State Bank, also testified for the plaintiff. He had a number of discussions with

Miss Aylward with respect to the coal business and stated that she talked about Mr. King and said she was going to give him her stock in the coal company as well as the real estate. This, he understood, was because of their long association in the business and in consideration of King's continuance therein. Mr. Johnson testified that he was under the impression that these transfers were to be made "right away," and that Miss Aylward was to retain the dividends on the stock as long as she lived. At best, Johnson's testimony merely indicates an intention on the part of Miss Aylward to make a gift and is not the kind of testimony that we have held necessary to establish an oral agreement to make a will. *Van Houten* v. *Vorce, supra; Schulz* v. *Steffey,* 275 Mich. 409; and the other cases herein cited. All the testimony, examined in the light of the acts of the parties, proves no more than an intention on the part of the deceased.

A further analysis of the evidence will be of little benefit, although all of it has been examined. We are compelled to conclude that appellant King has failed to sustain the burden of proof required by the authorities herein cited and quoted. Because of this determination, a consideration of the other questions raised by the appeal is unnecessary.

The decree of the circuit court is affirmed, with costs to appellees.

FEAD, C. J., and NORTH, BUTZEL, SHARPE, POTTER and CHANDLER, JJ., concurred with BUSHNELL, J. WIEST, J., concurred in the result.