## HINSON *v.* DILL.

1. SPECIFIC PERFORMANCE—ORAL CONTRACT TO LEAVE PROPERTY—TESTIMONY VIEWED WITH CAUTION.

   Testimony concerning oral agreement to leave property to plaintiff in return for her agreement to take care of deceased must be viewed with great caution because of frailties of memory, improbability of repeating precise language of deceased and fairly expressing full state of mind of such person and greater weight is given to the acts of alleged contracting parties than to what witnesses say they said.

2. SAME—ORAL CONTRACT TO CONVEY PROPERTY—EVIDENCE.

   To warrant a decree specifically enforcing an oral contract to convey property by will there must be something more than a mere unexecuted intention to make a will, there must be a contract, a meeting of the minds, clearly proven.

3. SAME—ORAL CONTRACT TO LEAVE PROPERTY—EVIDENCE.

   Evidence in suit for specific performance of alleged oral contract to leave property to plaintiff in return for her agreement to take care of deceased *held,* insufficient to establish a contract.

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 57 Am Jur, Wills, § 166 *et seq.*
[1–3] Remedies for breach of decedent's agreement to devise, bequeath, or leave property as compensation for services. 69 ALR 14; 106 ALR 742.

Appeal from Oakland; Holland (H. Russel), J. Submitted April 7, 1950. (Docket No. 34, Calendar No. 44,726.) Decided May 18, 1950.

Bill by Irene Huntt Hinson against Clarence Dill, administrator of the estate of Guy Huntt, deceased, and others for specific performance of an oral contract. Decree for defendants. Plaintiff appeals. Affirmed.

*Howard L. Richards* (*Preston Allen,* of counsel), for plaintiff.

*Levin, Levin, Garvett & Dill* (*Earlmont H. Dill,* of counsel), for defendants Dill and Pohlman.

*Connolly, Moynihan & Connolly,* for guardian *ad litem* of minors.

SHARPE, J. This is a bill for specific performance of an alleged agreement between plaintiff, Irene Huntt Hinson, and Guy Huntt, deceased, to leave his estate to plaintiff.

The record shows that plaintiff is a resident of the city of Berkley, Oakland county, Michigan. When her father died, she came to Berkley to live with her sister, went to school and later took a position as a waitress in a "Barbecue" where she met Pearl Huntt, wife of deceased.

Deceased and Pearl Huntt also lived in Berkley, both had been previously married and deceased had 2 children by his first marriage. Guy Huntt and Pearl Huntt operated a beer store in Berkley and sometime after 1933 plaintiff came to live with them. The Huntts introduced plaintiff as their daughter and she was so accepted in the community. In December, 1939, deceased and wife proposed to adopt plaintiff as their daughter, but after a consultation

with an attorney, learned that they could not do so as plaintiff at that time was more than 21 years of age. In January, 1940, plaintiff at the suggestion of deceased and wife had her name changed to Irene Ann Huntt. In November, 1940, plaintiff was married, but later divorced her husband and returned to the home of deceased and wife. Plaintiff's mother, who had been operating a used clothing and furniture store in Detroit, died May 31, 1944, and plaintiff took over the management of the store. She conducted the store full time for 3 or 4 months, then closed it for several days a week, returning home during this time to care for deceased who was ill at the time. In May or June, 1945, Pearl Huntt went to Wisconsin where she was operated upon and died June 12, 1945. Following the death of Pearl Huntt, plaintiff sold her store at auction and came home to take care of deceased, who died October 14, 1947.

The record shows that Grace Pohlman is the daughter of deceased; and that Ann Huntt and Donald Huntt are the children of Ray Huntt, a deceased son of Guy Huntt.

A petition for the administration of the estate of Guy Huntt was filed in the probate court of Oakland county and Clarence Dill was appointed administrator of the estate which consists of a 6-room house, an unimproved lot, and certain personal property, the total value of which is approximately $40,000.

On January 14, 1948, plaintiff filed a bill of complaint in the circuit court of Oakland county praying for a decree enjoining the administrator from taking any action to remove her from deceased's home during the pendency of the action and for a decree transferring deceased's property to her after the payment of debts and other expenses. The basis of plaintiff's prayer for relief, as stated in her bill of complaint, is as follows:

That in the year 1935 the plaintiff (then Irene Jessmon by birth), who was working with Pearl Huntt in an eating establishment, went to live in the home of Guy Huntt and Pearl Huntt, paying no board or room, but living as a member of the family and helping in the house during off hours.

That the plaintiff helped Guy Huntt and Pearl Huntt at times in a beer and wine store purchased by the Huntts.

That Guy Huntt and Pearl Huntt accepted and treated the plaintiff as a daughter and held her out as their daughter.

That in January, 1940, Pearl Huntt told the plaintiff that she and Guy Huntt wished to adopt her and make her their heir. However, upon consulting an attorney, the Huntts were advised that adoption was not possible because the plaintiff was over 21 years of age and not subject to adoption. Upon advice that the plaintiff's name could be changed and that the plaintiff could be made their heir by will, Guy and Pearl Huntt had an attorney file a petition for the plaintiff for the change of her name from Jessmon to Huntt; that the plaintiff's name was changed to Irene Ann Huntt by the Oakland county probate court on January 29, 1940.

That the plaintiff continued to take the place of a natural daughter thereafter, working in the home and store without salary under the mutual understanding that she was to be provided for in their will; and that Guy Huntt told friends that the plaintiff would have everything after they were gone.

That the plaintiff married in the fall of 1940 but continued to work for the Huntts; that the marriage lasted only a few weeks; and that the Huntts furnished the money for the plaintiff's divorce.

That the plaintiff's mother died on May 31, 1944, leaving her a small retail store in Detroit, which the plaintiff operated until Pearl Huntt died on June 12, 1945.

That Guy Huntt, in failing health at the time of Pearl Huntt's death, insisted upon the plaintiff sell-

ing out her store and staying with him in his home as long as he lived.

That the plaintiff sold the stock of her store at a loss of $1,000, but Guy Huntt assured her that his provisions would repay the loss many times, since the house and furnishings were the same as hers, and that she would never have to worry; that Guy Huntt's home was remodeled, redecorated, and improved to suit the plaintiff's desires.

That the plaintiff relied upon the agreement and promises, and took care of Guy Huntt until he died on October 14, 1947.

That Guy Huntt repeatedly reiterated to neighbors and friends his agreement with plaintiff and intentions to leave her his home and furnishings among other things.

That Guy Huntt had not seen his son, Ray, since Guy Huntt's divorce from his first wife, Lillian; and Guy Huntt had seen his daughter, Grace, only twice in the last 25 years.

And that the plaintiff had spent 12 years with the Huntts, except as otherwise explained, without compensation, depending upon the agreement made first with Guy and Pearl Huntt, and lastly with Guy Huntt, that the plaintiff would be made heir to their estate when the survivor was gone.

In support of her claim, plaintiff produced several witnesses. The substance of their testimony is as hereinafter related:

"Well, he was talking about Irene having to give up and the only one to do things for them, and he said that he was seeing she was taken care of, what he had was hers at his death. He said, 'She is not going to lose anything by taking care of me.' "

"He (Mr. Huntt) said to me. * * * 'Everything I have is hers, she is the only one who would do anything for me.' "

"Both (Mr. and Mrs. Huntt) talked about adopting her, they said they wanted to adopt her as their own."

"He (Mr. Huntt) says, 'I tell her to forget about it, I will make everything right with her, she has taken a terrible loss but I intend to make things right for her.'"

"Guy just made the remark, 'Well, it's just too bad we couldn't adopt her.'"

"He (Mr. Huntt) said, 'Benton, Kiddie (plaintiff) wants to go to work' * * * 'I just don't feel that I could stay here alone,' and he says , 'I just told her if she would stay here and take care of me and look after me, she wouldn't have to worry about working and she would be well taken care of.'"

"He (Mr. Huntt) says, 'Well, I have no will but I have something just as good.'"

"And Guy told me that if Irene stayed with him the rest of his life that she would get what he had."

"I did hear him (Mr. Huntt) say, 'I don't pay Irene any salary, but anything she needs, all she has to do is come and ask for it.'"

"He (Mr. Huntt) said, * * * 'Don't worry, I have got things fixed for Irene's security.'"

"Guy said, 'I turned Irene loose, she can do anything in her home she pleases.'"

"He (Mr. Huntt) would see Irene was taken care of."

"He (Mr. Huntt) said he wanted Irene to go ahead, 'I have just told her to go ahead,' he was telling me in a conversation as we were talking, like we would sit down and visit. 'To go ahead and pick out what she wants, go ahead and fix it up the way she wants because it is to be hers, anyway, if anything happens to me.'"

"He (Mr. Huntt) told me he would take care of Irene and see Irene didn't suffer any financial loss from the sale of her store."

At the close of plaintiff's case defendants made a motion for the entry of a decree dismissing her bill of complaint because of a lack of proof that such an agreement was made or communicated to plaintiff. The trial court took the motion under advisement and later granted it.

In an opinion filed in this case the court said:

"The testimony in this case submitted by the plaintiff does not, under the most favorable construction, establish or prove the existence of a contract. There being no contract there is nothing for the court to specifically enforce. The plaintiff, to prevail, must prove that the deceased, Guy Huntt, entered into a contract with her in which he obligated himself to leave her his entire estate at his death. In view of the different and, at times, exceedingly vague statements made by the deceased relating to how and what he proposed to do for the plaintiff in consideration of his care, the court cannot say or find with even a slight degree of assurance that he either planned with certainty or offered to give to the plaintiff his property or all that he had upon his death if she took care of him until that event. The most that can be said is that the deceased had some such plan under consideration on several occasions, but there is no proof that such a plan or offer was ever brought to the attention of the plaintiff or that her valuable services were furnished in furtherance of such an offer and its acceptance. If the deceased were no more explicit or consistent in discussing compensation with the plaintiff than he was with the others with whom he discussed the problem, she (plaintiff) could not have possibly known where she stood."

Accordingly, a decree was entered from which plaintiff appeals. The principal question involved

in the case at bar is whether there is proof that plaintiff and Guy Huntt entered into an agreement whereby plaintiff obligated herself to take care of him for the balance of his life and he in return obligated himself to leave her his entire estate.

In *King* v. *Luyckx*, 280 Mich 117, 122, we said:

"Our observations in *Paris* v. *Scott*, 267 Mich 400, are applicable to the situation presented by this appeal. We said in that case at page 403:

" 'In cases of this kind, the testimony of witnesses must be viewed with great caution, because of the frailties of memory, the improbability of repeating the precise language of a person since deceased, of fairly expressing the full state of mind of such person, and because the change of a word may mean the difference between a binding contract and a mere expression of intention. Care must also be taken lest the court, out of consideration of equity or sympathy, make a contract for the parties where none existed, even though such contract might or would express their desires. Where the alleged contracting parties cannot testify, their acts loom large as compared with what witnesses say they said.

" 'Without attacking the credibility of any of the witnesses, the case presents persuasive indices that the conversations relied upon were merely expressions of intention rather than of a contract which Fred and Alice Paris considered binding on them.' "

Plaintiff relies upon *Puddy* v. *Sharpe*, 248 Mich 147, in support of her claim that specific performance is the proper remedy to enforce an oral agreement. In that case we said:

"The disclosed circumstances indicate a contract relation, and John Puddy's declarations were of an agreement rather than of a mere intention."

We have examined other cases cited by plaintiff, but do not find in them facts similar to those in the case at bar.

"To warrant a decree specifically enforcing an oral contract to convey property by will there must be something more than a mere unexecuted intention to make a will. There must be a contract, a meeting of minds, clearly proven." *Kerns* v. *Kerns,* 303 Mich 23, 29.

We are in accord with the conclusion of the trial court when he stated: "The testimony in this case submitted by the plaintiff does not, under the most favorable construction, establish or prove the existence of a contract."

The decree of the trial court is affirmed, with costs to defendants.

BOYLES, C. J., and REID, NORTH, DETHMERS, BUTZEL, CARR, and BUSHNELL, JJ., concurred.