**McGLONE v. GOMPERT et al.**

Civ. No. 6849.

United States District Court
N. D. Ohio, W. D.
June·12, 1953.

Robert B. Gosline and Shumaker, Loop & Kendrick, Toledo, Ohio, for plaintiff.

Young & Young, Norwalk, Ohio, and Leo W. Kenny, Fremont, Ohio, for defendants.

KLOEB, District Judge.

This is an action for specific performance of an alleged agreement to make wills in .favor of plaintiff or, in the alternative, for damages for breach of the alleged agreement.

The complaint in this case was filed on July 16, 1952. Plaintiff is a. citizen of the State of Illinois and defendants are citizens of the State of Ohio. Diversity of citizenship is, therefore, the ground for jurisdiction of this Court.

Plaintiff alleges that she is the daughter of Otto H. Lantz, deceased, and the stepdaughter of Martha A. Lantz, deceased, who was the second wife of Otto H. Lantz.

Defendant Urban Gompert is the executor of the estate of Martha A. Lantz, having been duly appointed and qualified by the Probate Court of Sandusky County, Fremont, Ohio. Defendant Clara Gompert is the sole legatee and devisee of the estate of Martha A. Lantz under the last will and testament of the deceased. The defendant Urban Gompert, as an individual, is the husband of the defendant Clara Gompert.

Plaintiff alleges that, on April 23, 1947, Otto H. Lantz and Martha A. Lantz entered into a contract for the benefit of plaintiff, whereby it was agreed that Otto would, by will, leave his entire estate to Martha, with the provision that if Martha predeceased him then his entire estate would pass under his will to plaintiff, Berniece L. McGlone; that Martha agreed that she would, by will, leave her entire estate to Otto, with the provision that if he should predecease her she would leave her entire estate, by will, to plaintiff Berniece; that, pursuant to said contract and agreement, and on the same day, April 23, 1947, at Lansing, Michigan, Otto and Martha executed mutual wills in which each left his or her entire estate to the other or, in the alternative, to Berniece if the other should predecease the surviving spouse; that subsequently, on August 14, 1949, Otto died; that his will was probated, his estate administered and all the assets thereof passed to Martha; that, on August 29, 1951, Martha, in violation of the contract, executed a second will by which she revoked her will of April 23, 1947 and devised and bequeathed all of her estate to defendant, her sister, Clara Gompert; that, on October 12, 1951, Martha died a resident of Fremont, Sandusky County, Ohio.

Amended answers were filed by the defendants in due course.

On November 10, 1952, defendant Urban Gompert, as executor, propounded certain interrogatories of plaintiff. Interrogatory No. 1 is as follows:

"State whether the alleged contract referred to in the complaint was oral or in writing."

On November 24, plaintiff answered the interrogatories and the answer to interrogatory No. 1 was as follows:

"The contract referred to in the complaint was an oral contract later reduced to writing by the execution of mutual Wills by Otto H. Lantz and Martha A. Lantz in Lansing, Michigan, on April 23, 1947."

On December 4, the depositions of Harry D. Hubbard, Esquire, who was the attorney who drafted the wills for Otto and Martha in Lansing, Michigan, and of Mrs. William Noonan, who was the stenographer in the office of Mr. Hubbard, were filed.

On December 8, defendants moved the Court for summary judgment. A memorandum in support of the motion was duly filed, a memorandum in opposition thereto was filed by plaintiff, and a reply memorandum was filed by defendants.

On December 30, the depositions of Urban and Clara Gompert were filed and, on February 2 and February 20, 1953, depositions of Mary Jane Krug, a cousin of plaintiff, and of Helen Snyder, an aunt of plaintiff, and of John J. McGlone, husband of plaintiff, and the deposition of plaintiff herself were filed.

Copies of the wills of Otto and Martha and of the second will of Martha are attached to the depositions.

On page 10 of the brief of plaintiff opposing defendants' motion for summary judgment, we find the following:

"As has been pointed out before, the defense of the statute of frauds is not made by either of the amended answers. However, to avoid the necessity of awaiting the filing of an amended answer to renew the motion for summary judgment, we believe that it is permissible and appropriate for the court to consider this defense in the same manner as if it had been pleaded."

The answers to the interrogatories and the depositions are submitted to the Court for consideration in connection with the motion for summary judgment.

It appears that Otto and Martha had both been married prior to their marriage in the year 1926; that plaintiff Berniece was the issue of the first marriage of Otto; that Martha's only child by her first marriage had died prior to 1926; that, in the year 1926, Otto and Martha were married and upon their marriage established their home in Toledo, Ohio, and that there were no children as the issue of this marriage; that Otto was a structural engineer engaged chiefly in the business of drafting for construction purposes, and that the depression beginning in the fall of 1929 was unkind to him in that he lost his worldly possessions

as well as his position as an engineer; that, during the depression years, Otto and Martha visited frequently with the defendants in Fremont, Ohio, and the defendants gave them some material assistance while Otto was out of work; that thereafter Otto and Martha moved to Lansing, Michigan, where he obtained a new position and began to acquire some money, bonds and real estate; that he was the owner of an interest in certain real estate which he had inherited at Massillon, Ohio; that, on April 23, 1947, Otto and Martha appeared at the office of Harry D. Hubbard, Attorney at Law, in Lansing, Michigan, for the purpose of making their wills; that in the will of Otto he provided in item second thereof that Martha should have the life use and income of the garage building in Massillon, Ohio, so long as she remained the widow of Otto, but upon her death or remarriage then all interest in the garage was to pass to Berniece; that under item third, all the rest and residue of his estate was to pass to Martha, and under item fourth of the will was the provision that if Martha should predecease him then all of his property was to pass to Berniece. In the will of Martha, she provided in item second thereof that all of her property at the time of her death should become the property of her husband Otto, and in item third she provided that if Otto should predecease her then she devised and bequeathed all of her estate to her beloved daughter Berniece.

Nowhere in these wills of April 23, 1947 is any mention made or is there any reference to any contract or agreement to make these wills, nor is mention made in either of the wills of the making or the existence, or the contents of the other will; neither will makes reference to the other.

Plaintiff's position is set forth on page 6 of her brief opposing defendant's motion for summary judgment. We find there the following:

"The circumstances surrounding the execution of the mutual wills of Otto H. Lantz and Martha A. Lantz establish a contract to make mutual wills leaving all property to the plaintiff, Berniece L. McGlone, which contract was partially performed by the execution of these wills."

On page 10 of the deposition of Harry D. Hubbard, Attorney at Law, he attempts to set forth the conversation that occurred between Otto and Martha and himself as their attorney at the time that he drafted the wills. In answer to the question as to what conversation took place between the three of them, he replied:

"I discussed with them the parcels of property, or the various pieces of property they owned. One of them was an undivided interest in a garage property in Massillon, Ohio, which Mr. Lantz had an interest in. They told me that they wanted their wills drawn alike, that they both wanted their property, or the survivor of the two of them, that their property go to the daughter of Mr. Lantz and the stepdaughter of Mrs. Lantz. The discussion was that whatever the survivor of them had left, that she was to have this property, and I was to draw the wills pursuant to that understanding between them, which I proceeded to do.

\*     \*     \*     \*     \*     \*

"They were very much in agreement. The wills were drawn with the complete understanding, agreement, and direction of them, in the presence of each other."

In the depositions of Mary Jane Krug, Helen Snyder and John J. McGlone, they recite conversations had with Martha late in the year 1949, and shortly after the death of Otto, in which they say that Martha wanted them to know that she and Otto had mutually agreed to have their property go to Berniece on their deaths.

Do the circumstances surrounding the execution of the wills of Otto and Martha establish a contract to make mutual and irrevocable wills leaving all property to the plaintiff Berniece under admissible evidence in this case?

In 32 Ohio Juris., at page 225, we find the following:

"§ 18. Evidence.—It is well settled that matters of evidence are matters of

remedy, and it follows that the law of the forum will determine the admissibility, competency, quality and degree of evidence." (There follows numerous citations of Ohio authorities, including the Supreme Court of Ohio.)

Section 11494 of the General Code of Ohio reads, in part, as follows:

"Privileged communications and acts.–The following persons shall not testify in certain respects:

"1. An attorney, concerning a communication made to him by his client in that relation, or his advice to his client; * * *."

In the case of Emley, Ex'r, v. Selepchak, 76 Ohio App. 257, at page 262, 63 N.E.2d 919, 922, we find the following:

"Another exception, based upon the same principle of confidentiality, is 'when the *same attorney acts for two parties* having a common interest, and each party communicates with him. Here the communications are clearly privileged from disclosure at the instance of a third person. Yet they are not privileged in a controversy between the two original parties, inasmuch as the common interest and employment forbade concealment by either from the other * * *.' VIII Wigmore on Evidence, 3d Ed., Section 2312."

■ We conclude that the testimony of Attorney Hubbard concerning the communications had between himself and his clients Otto and Martha are privileged, and that they are not admissible at the behest of a third party, in this case plaintiff Berniece L. McGlone.

Section 10504–3a of the Ohio General Code reads as follows:

"Agreement enforceable, when.–No agreement to make a will or to make a devise or bequest by will shall be enforceable unless such agreement is in writing, signed by the party making it or by some other person by his express direction, in which latter case the instrument must be subscribed by two or more competent witnesses who heard such party acknowledge that it was so signed by his direction." (Eff. Sept. 2, 1935.)

In the case of Snyder v. Warde, Adm'x, 151 Ohio St., page 426, 86 N.E.2d 489, decided May 25, 1949, paragraph 1 of the syllabus reads as follows:

"An oral contract to make a will is unenforcible by virtue of Section 10504–3a, General Code, and payment of consideration by one in whose favor the contract is made, whether that payment consists of money or pecuniarily compensable services, will not remove such a contract from the operation of the section."

In the case of Sherman v. Johnson, 159 Ohio St. 209, 112 N.E.2d 326, 328, decided April 22, 1953, paragraph 2 of the syllabus reads as follows:

"Where a writing does not contain words which can be reasonably construed as words of promise or agreement or as an indication of any contract or agreement, such writing cannot be a memorandum or note of any agreement within the meaning of Section 8621, General Code, or an agreement in writing within the meaning of Section 10504–3a, General Code."

Paragraph 4 of the syllabus reads as follows:

"By virtue of Section 10504–3a, General Code, an agreement to make a will or to make a devise or bequest by will is not enforcible under any circumstances unless it is in writing. (Paragraph one of the syllabus in Snyder v. Warde, Adm'x, 151 Ohio St. 426, 86 N.E.2d 489, approved and followed. Paragraph two of the syllabus in Ayres v. Cook, 140 Ohio St. 281, 43 N.E.2d 287, so far as it refers to Section 10504–3a, General Code, overruled.)"

■ Even assuming the testimony of the witness Hubbard to be admissible, the alleged contract or agreement in this case, being an oral one, is not enforcible under the provisions of Section 10504–3a, Ohio General Code.

There has been much indiscriminate reference, by counsel in this case, to a so-called "mutual will" and to a "joint will"

or a "joint and mutual will" and many authorities have been cited to the Court that involve a joint will of husband and wife or a joint and mutual will. Unquestionably, there is more likelihood of discovering a contract or agreement between a husband and wife in a joint and mutual will than in separate wills. However, we are not here dealing with a joint will or a joint and mutual will. We are dealing with simultaneous or concurrently executed wills of husband and wife that were not wholly identical in their nature.

In the case of Flower v. Flower, 32 Ohio App. 350, 166 N.E. 914, in paragraph 2 of the syllabus we find the following:

"Although provisions of mutual wills and subsequent circumstances may be such that contract to make mutual wills must be conclusively inferred, mere fact that wills are executed concurrently with full knowledge of their contents on part of testators will not be sufficient to imply such a contract."

On page 351 of 32 Ohio App., on page 914 of 166 N.E. of the opinion by Williams, Judge, we find the following:

"* * * There is, however, no other proof whatever of the existence of an agreement between the parties in regard to the making of such wills, and neither will makes any reference to the other."

It is to be noted that this case was decided on December 10, 1928, about seven years before the enactment of Section 10504–3a.

Continuing on page 351 of 32 Ohio App., on page 914 of 166 N.E., we find the following:

"The husband, George Flower, died before his wife, and she made another last will and testament by which she revoked the one above referred to previously made by her. The contention of the plaintiff is that there is an implied contract between the two testators to leave their property to each other.

*     *     *     *     *     *

"The provisions of mutual wills and the surrounding circumstances may be such that a contract to make mutual wills must be conclusively inferred. Doyle v. Fischer, Ex'r, 183 Wis. 599, 198 N.W. 763, 33 A.L.R. 733. The mere fact, however, that wills are executed concurrently, with full knowledge of their contents on the part of the testators, will not be sufficient to imply such a contract. Edson, Ex'x, v. Parsons, Ex'r, 155 N.Y. 555, 50 N.E. 265; Coveney v. Conlin, 20 App.D.C. 303."

Even were Section 10504–3a of the General Code not in existence, we find nothing in these simultaneous and concurrently executed wills of Otto and Martha nor in the circumstances surrounding the execution of the wills from which a contract to make irrevocable wills could be inferred.

In the case of Kenney v. Kenney, Admx., 45 Ohio App. 249, 186 N.E. 853, decided January 9, 1933, paragraph 2 of the syllabus reads as follows:

"Execution of mutual wills by brothers, conveying portions of their property to each other, held insufficient alone to establish contract to make mutual wills, that would satisfy statute of frauds (Gen.Code, § 8617 et seq.)"

Section 8617 et seq. were made applicable to wills by the Ohio Courts prior to the enactment of Section 10504–3a.

Turning to Supreme Court decisions in the State of Michigan, where apparently no section comparable to Section 10504–3a of the Ohio General Code is in effect, we find the case of Keasey v. Engles, 259 Mich. 178, 242 N.W. 878. On page 879 of 242 N.W., we find the following:

"The rather common expression that a joint and mutual will is irrevocable by the survivor, after the death of one party to it, is not technically and legally correct. It is the contract to make the will, not the will itself, which is irrevocable. * * *"

In the case of Elmer v. Elmer, 271 Mich. 517, 260 N.W. 759, at page 761 we find the following:

"We agree with the trial court in his finding when he said: 'Therefore, this Court is of the belief that the proofs merely establish the fact that there was a desire—you might say a mutual

agreement—between them at the time, that they then wished their son to have this property when they were both through with it. But there is not sufficient evidence in my judgment to establish by any slight preponderance any agreement between Mr. and Mrs. Elmer that neither would change the wills that were made without the consent of the other. And it is necessary to establish that in order for the plaintiff to prevail.'"

In the case before us we find no hint or suggestion in the wills of Otto and Martha, or even in the testimony of Attorney Hubbard, if it were admissible, that indicates any desire or agreement upon the part of Otto and Martha to make irrevocable wills.

In the case of Schondelmayer v. Schondelmayer, 320 Mich. 565, 31 N.W.2d 721, at page 723, we find the following:

"* * * In Eicholtz v. Grunewald, 313 Mich. 666, 21 N.W.2d 914, 918, we said:

" 'However, the mere fact alone that two identical wills are made by husband and wife does not suffice to establish an oral agreement to make mutual reciprocal wills, each to be binding on the other * * *.'

" ' " It is contract to make joint and mutual will, not will itself, that is irrevocable by survivor after death of one party to it." Keasey v. Engles (syllabus), 259 Mich. 178, 242 N.W. 878.' "

In the case of Paris v. Scott, 267 Mich. 400, 255 N.W. 216, we find the following:

"In 1929 each made a will leaving all his estate to the other and executed deed of his real estate to the other. The wills and deeds were kept in a safety deposit box. The scrivener testified that they told him they had agreed to do this and that the survivor was to leave his remaining estate to plaintiff. There was further testimony that, after the will was made, one or the other told friends they had agreed to will their property to each other and the survivor was to leave the residue to plaintiff." 255 N.W. at page 216.

"The testimony preponderates that Fred and Alice Paris intended plaintiff to take their estate on death of the survivor. But the question is whether they contracted to that effect. The gist of the action is that a binding contract was made between them so that failure of Fred to make the intended will was a fraud upon Alice, who had performed her part of the agreement." 255 N.W. at page 217.

"Without attacking the credibility of any of the witnesses, the case presents persuasive indices that the conversations relied upon were merely expressions of intention rather than of a contract which Fred and Alice Paris considered binding on them." 255 N.W. at page 217.

■ We are of the opinion that the testimony of the witnesses Mary Jane Krug, Helen Snyder and John J. McGlone concerning conversations had with Martha shortly after the death of her husband, Otto, are not admissible to prove a contract to make a will under the provisions of Section 10504-3a, but even were such section of the law not in existence, we would receive such testimony with extreme caution and be inclined to look upon it as reciting mere expressions of opinion upon the part of Martha and not as going to the heart of the question of whether a contract was actually made between Otto and Martha to make irrevocable wills. In the uncontroverted testimony of Clara and Urban Gompert, we find ample reasons to cause Martha to revoke her former will in the interest of her own welfare and physical well being during the remaining years of her life.

The motion for summary judgment is sustained and the complaint is dismissed.

In view of the detailed opinion herein rendered, findings of fact and conclusions of law may be dispensed with.

An order may be drawn accordingly.