### SIEG v. SENDELBACH.

1. SPECIFIC PERFORMANCE—ORAL CONTRACT TO CONVEY LAND—PROOF.

In suit for specific performance of alleged oral contract to convey land, burden of proof is on plaintiff, and must be such as satisfies mind and conscience of court that contract was made as claimed.

2. EVIDENCE—ORAL CONTRACTS—STATEMENTS OF INTENTION.

Statements of foster mother that she intended to leave part of her property to plaintiff was properly held to be merely expressions of intention and not to evidence making of contract to that effect.

3. SPECIFIC PERFORMANCE—ORAL CONTRACT—SUFFICIENCY OF EVIDENCE.

In suit for specific performance of alleged oral contract by foster mother to convey to plaintiff one-half of home property, evidence, *held*, insufficient to establish said contract.

Appeal from Wayne; Root (Jesse H.), J., presiding. Submitted October 29, 1931. (Docket No. 180, Calendar No. 36,015.) Decided January 4, 1932.

Bill by Gertrude Sieg against John Sendelbach, personally and as executor of the last will of Gertrude . Sendelbach, deceased, for specific performance of an alleged oral contract for conveyance of land. Bill dismissed. Plaintiff appeals. Affirmed.

*Woodruff & Woodruff* and *Atkinson, Ortman & Shock,* for plaintiff.

*Charles F. Delbridge* and *W. Leo Cahalan,* for defendant.

FEAD, J. When a few days old, plaintiff was taken into the family of Gertrude Sendelbach, her aunt, and thereafter was regarded as a daughter, although not legally adopted. Mr. Sendelbach died in 1912. In 1916, plaintiff married and left home. Defendant and wife then went to live with the mother and continued until May, 1917, when they left because of difficulty between the mother and daughter-in-law. Thereafter defendant gave his mother from $2 to $5 per week as long as she lived. In June, 1917, plaintiff and her husband returned to the mother's home and lived with her continuously until January, 1930, when the mother, being 72 years old and ill, and plaintiff being unable to take care of her because of her own sickness, was moved to defendant's home, where she died in March.

While living with plaintiff and her husband, and on October 29, 1929, Mrs. Sendelbach made a will devising the home real estate to defendant, the household goods, furniture, and jewelry to plaintiff, and the residue to plaintiff and defendant equally. The will was made at her home while she was living with plaintiff and they were on good terms, and no question is raised of influence or incompetency.

This suit is for specific performance of an alleged contract, claimed to have been made when plaintiff returned to her mother's home in 1917, that the mother would devise her a half interest in the home property in consideration of plaintiff's taking care of her during her lifetime.

While plaintiff and her husband lived with the mother, they apparently took good care of her, made some repairs upon the property, and claimed to have paid taxes, although the circuit judge was not satisfied with the proof in the latter respect and it could have been more clearly established if true. Upon the whole testimony, plaintiff made a strong showing of equitable claim to compensation for her services, but the case does not rest upon equities. The question is whether she made a contract.

In this class of cases, the burden is on plaintiff to present proof which "must be such as satisfies the mind and conscience of the court that the contract was made as claimed." *Hiles* v. *First National Bank,* 237 Mich. 278.

Plaintiff's case rests upon the testimony of her husband:

"She says if we would live with her 'the daughter,' what she called her, was to get equal half in the property that she had and we were to run the table and that's all that was said."

There was other testimony that the mother often had expressed herself as intending to leave her property equally to her children, and also testimony that, in accordance with her husband's wish, defendant should have the home. We think the court was right in holding that these statements, if made, were merely expressions of the mother's intention from time to time and did not evidence the making of a contract.

We are not informed of the value of the property when Mrs. Sendelbach died, and, therefore, do not know that there was not an equal division of the whole which would satisfy the contract if it had been made. As stated in the testimony, the claimed agreement did not specify that plaintiff should receive half the real estate.

However, we think the attending circumstances sustain the ruling of the circuit court that plaintiff did not establish a contract by a preponderance of the testimony. Plaintiff's husband was an interested witness, and the transaction as stated by him was not so unequivocally a contract as to exclude the idea that it was merely an expression of the mother's future intention. It does not appear that either of the parties unmistakably recognized their relationship as contractual. During the time the mother was at the son's house in 1930 plaintiff and her husband paid her $35 rent. After her death, they negotiated with defendant and agreed to pay him $25 per month rent, but they did not do so. They made no claim of contract until after defendant sought to evict them, when they began this suit. The natural inference is that no contract had been made and that the present claim was an afterthought. This inference is supported by the fact that the mother executed the will while she was living with plaintiff and was on good terms with her, no reason was indicated for her breaching an agreement if one had been made, and the disposition of the property was upon the basis of equitable division, as conceived by the mother, rather than upon payment of a debt.

Decree affirmed, with costs.

CLARK, C. J., and McDONALD, POTTER, SHARPE, NORTH, WIEST, and BUTZEL, JJ., concurred.