KERNS *v.* KERNS.

1. SPECIFIC PERFORMANCE—ORAL AGREEMENT TO CONVEY PROPERTY—
   EVIDENCE.
   To warrant a decree specifically enforcing an oral contract to
   convey property by will there must be something more than
   a mere unexecuted intention to make a will, there must be a
   contract, a meeting of the minds, clearly proven.

2. SAME—BURDEN OF PROOF.
   The burden of proving a contract to convey property by will
   is upon the plaintiff seeking specific performance thereof.

3. SAME—ORAL CONTRACT TO CONVEY PROPERTY BY WILL—TESTI-
   MONY VIEWED WITH CAUTION.
   Testimony concerning oral agreement to leave property by will
   must be viewed with great caution because of frailties of
   memory, improbability of repeating precise language of de-
   ceased and expressing full state of mind of such person, and
   greater weight is given to the acts of alleged contracting par-
   ties.

4. SAME—ORAL CONTRACTS—WILLS—CLOSE SCRUTINY OF EVIDENCE.
   While the required proof in a suit for specific performance of
   an alleged oral agreement to leave property by will is the
   same as in civil cases generally, the nature of the litigation
   is such as to require courts to scrutinize the testimony closely
   and to weigh it and test it in the light of all circumstances
   disclosed by the record since estates of deceased persons
   should not be diverted in consequence of such agreements ex-
   cept upon proof which satisfies the mind and conscience of
   the court that the contract was made as claimed.

5. SAME—ORAL CONTRACT TO CONVEY PROPERTY BY WILL—EVIDENCE
   —INFERENCES.
   In suit for specific performance of alleged oral agreement by
   plaintiff's father to convey to plaintiff one-half of his es-
   tate by will, evidence that, shortly after it is claimed such
   agreement was made, the father made *inter vivos* transfers
   inconsistent therewith and made a will providing for a dis-
   position different from that in the agreement and that plain-
   tiff made no objection to such action on father's part as
   being in violation of a binding contract supported inference

Distinction between manifestation of intention and an offer to con-
tract, see 1 Restatement, Contracts, § 25.

that neither plaintiff nor his father believed a binding contract had been entered into.

6. Appeal and Error—Chancery Cases—De Novo Review—Evidence.

While the Supreme Court hears chancery appeals *de novo*, it is mindful of the advantage possessed by the trial judge before whom the witnesses appear in person.

7. Same—Findings by Trial Court—Expressions of Testamentary Intention.

In suit for specific performance of an alleged oral contract by plaintiff's father to convey property by will, finding of trial judge that testator's statements should be regarded as expressions of testamentary intention rather than as making a binding contract is not disturbed when testimony is carefully scrutinized in the light of surrounding facts and circumstances.

8. Same—Saving Question for Review—Chancery Case—Separate Record—Matters Equally Within Knowledge of Deceased.

In suit for specific performance of alleged agreement by plaintiff's father to leave him property by will, whether or not defendant waived operation of statute as to matters equally within the knowledge of deceased father is not determined as case was in chancery and there had been no compliance with statute for taking separate record as to matter claimed to have been excluded improperly (3 Comp. Laws 1929, §§ 14159, 14219).

9. Same—Admissibility of Excluded Testimony—Saving Question for Review—Supreme Court.

To preserve the question of the admissibility of excluded testimony in chancery cases for proper review, correct practice requires that a special record of the offered testimony should be made, and where special record was not made nor court asked for leave to do so, Supreme Court will not exercise its discretion to have testimony taken and sent here (3 Comp. Laws 1929, § 14159).

10. Same—Chancery Cases—Separate Record—Statutes.

One purpose of statute providing for separate record of excluded testimony in chancery cases is to prevent hearing chancery appeals piecemeal (3 Comp. Laws 1929, § 14159).

Appeal from Ingham; Carr (Leland W.), J. Submitted June 3, 1942. (Docket No. 32, Calendar No. 41,992.) Decided September 8, 1942.

Bill by Harry B. Kerns against Harriet M. Kerns, individually and as special administratrix of the estate of William G. Kerns, deceased, and Beryl Bonner for specific performance of an alleged oral agreement to devise property, to set aside conveyances, and for other relief. Bill dismissed. Plaintiff appeals. Affirmed.

*Richard J. Shaull* and *Marshall, Searl & Dean,* for plaintiff.

*Kelley, Eger & Kelley,* for defendant Harriet M. Kerns, individually and as special administratrix of the estate of William G. Kerns, deceased.

BOYLES, J. This is a bill in equity in which plaintiff seeks the specific performance of an alleged oral agreement on the part of William G. Kerns, now deceased, to leave to plaintiff one-half of the property which the deceased owned at the time of the making of the alleged contract. Plaintiff also seeks to have certain property conveyed to Harriet M. Kerns by the decedent impressed with a trust in his favor.

The deceased, William G. Kerns, was during his lifetime married three times. Plaintiff is a son by the first marriage. When his father and mother separated plaintiff remained with his mother and was reared by her and his foster father under the latter's name of Johnston. William G. Kerns remarried and after his second wife's death married Harriet M. Monroe, now Kerns, one of the defendants in this case.

Prior to December 1, 1923, plaintiff lived in the city of Saginaw. It is his claim that the decedent "opportuned" him on numerous occasions extending over a period of several months to quit his employment and move to the city of Lansing, decedent stating that it was his purpose and desire to make

amends for his failure in the past properly to treat and care for plaintiff as his son; that upon the last of these occasions, which occurred about December 1, 1923, decedent advised plaintiff that if plaintiff would quit his employment and move to Lansing and there establish himself and carry on the "Kerns" name as requested by him that decedent would obtain for plaintiff gainful employment, and that upon the death of decedent he would leave to this plaintiff one-half of decedent's then estate which decedent then represented to be worth $600,000; that plaintiff, relying upon such promise upon the part of his father, and at his request, gave up his employment and moved to Lansing, of which city he remained a resident continuously until the time of the death of his father which occurred July 26, 1939; that plaintiff at all times since the making of the alleged agreement performed in full his part thereof but that decedent failed and neglected to carry out his part of said agreement, and that subsequent to the making of such agreement decedent, in fraud of the right of plaintiff as creditor of said decedent under the claimed agreement, conveyed certain property to Harriet M. Kerns; and that as a result of these conveyances decedent was at the time of his death owner of property inventoried in his estate at a value of only $6,577.57.

The trial court found that there was no contract, and that the statements made by the deceased on the occasion in question, and probably on other occasions, merely indicated his then testamentary intention. A decree was entered dismissing the bill of complaint. Plaintiff appeals.

On this appeal, decision rests upon whether there was sufficient proof of the claimed oral contract.

In support of the claimed contract, the testimony of Mable Wolverton, who stated she was present

when the conversation in question took place, was introduced. She testified:

"A. * * * That was in December of the year that they moved away. I remember these things so vividly because Mr. and Mrs. Harry B. Kerns and I had been like brother and sister for all these years that I had known them, and I did not want to see them move away. I was heartbroken to think they would even consider it. On the occasion that William G. Kerns came to the home of his son, on Lapeer street, Beatrice M. Kerns and I were there at the time. Later Harry came from work and Beryl came in for dinner toward evening.

"Q. Did you hear any conversation between the family, Harry B. Kerns and William G. Kerns about Harry Kerns and his family moving to Lansing?

"A. Yes, I did.

"Q. Tell the court what you heard.

"A. Mr. Kerns, after they were talking a while, Mr. Kerns said, 'Well, Harry, have you made up your mind to move to Lansing,' and Harry said, 'Well, Dad, I don't know. I have got a nice position with the Standard Oil Company and as I have told you, I am due for a promotion and I like my work and I hate to leave here.' And Mrs. Kerns, she said, Well she had had all her friends there and she did not want to come. * * *

"Q. What did Mr. Kerns say?

"A. Well, they talked back and forth for quite a while. He said, 'Well, Harry,' he finally got peeved at Harry and he said—can I tell just what he said?

"Q. Yes, I want you to relate it as near as you can.

"A. He said, 'What the hell is the matter with you, Harry, why don't you want to come to Lansing? You have got nothing to lose,' he said. He said, 'I am worth $600,000 and you are my son and I will see that you get half of that at my death.'

"Q. What did Harry say?

"*A.* Well, they talked a while. He said, 'Well, Dad, when you put it that way I can't refuse. We will come.' "

Plaintiff's daughter, Beryl Bonner, who was also present when the conversation in question took place, gave testimony substantially the same as that given by Mrs. Wolverton:

"*A.* There was general conversation, but of course I greeted my newly found grandfather and he acted as much pleased to see me as I was to see him, and then he said, Harry, when are you going to come to Lansing to live? I want you to come, and he repeated, I have not been a father to you, and, I want to make amends, and my Dad said he had this position and that he had not made up his mind. He did not want to come to Lansing. There was more conversation. Finally my grandfather said, what is the matter with you. You have not got anything to lose or anything to worry about. I want you to come to Lansing and I will never see you suffer for anything, and my father still hesitated, and my grandfather said, Why I am worth $600,000 and at my death I will give you half of it. And my father said, Dad, when you put it that way I cannot refuse. I will come."

Mrs. Bernice Ford, who roomed with Mr. and Mrs. Harry B. Kerns in their home in Lansing, testified that in 1935 she heard William G. Kerns state that he had brought Harry down here and that he would do what he had promised regardless of what happened.

Defendant Harriet M. Kerns testified that she had never heard any statement from the deceased to the effect that he had made any agreement with plaintiff about the division of his property.

The record further shows that subsequent to the date of the making of the alleged oral contract the deceased transferred various properties to Harriet

M. Kerns. He made a will dated November 29, 1924, in which he provided for certain cash bequests to various persons, left his personal jewelry to the plaintiff, his household furnishings to Harriet M. Kerns; and gave the residue of his estate, real and personal, one-half to Harriet M. Kerns, and the other one-half to plaintiff, Beryl Kerns, David Monroe, and Douglas Monroe. In a later will, dated September 9, 1933, William Kerns stated:

"Third. In preparing this will I am not unmindful of my son, Harry B. Kerns, as in the past I have given to him considerable moneys and deeded to him, outright, properties which I at the present time consider a fair share of any properties, both real and personal, which I have had or may at the present time possess. Therefore, to my son, Harry B. Kerns, I bequeath the sum of $1,000."

The will further provided for a bequest of $500 to Beryl Bonner, and gave the residue of all the property to Harriet M. Kerns.

To warrant a decree specifically enforcing an oral contract to convey property by will there must be something more than a mere unexecuted intention to make a will. There must be a contract, a meeting of minds, clearly proven. *King* v. *Luyckx,* 280 Mich. 117; *Van Houten* v. *Vorce,* 259 Mich. 545; *In re Cramer's Estate,* 296 Mich. 44. The burden was on plaintiff to prove the contract alleged in order to have specific performance decree. *Drolshagen* v. *Drolshagen,* 230 Mich. 444; *Sieg* v. *Sendelbach,* 256 Mich. 456; *In re Cramer's Estate, supra.* In cases of this sort the court will view the testimony of the witnesses with great caution and will scrutinize it closely. As we said in *King* v. *Luyckx, supra:*

"Our observations in *Paris* v. *Scott,* 267 Mich. 400, are applicable to the situation presented by this appeal. We said in that case at page 403:

" 'In cases of this kind, the testimony of witnesses must be viewed with great caution, because of the frailties of memory, the improbability of repeating the precise language of a person since deceased, of fairly expressing the full state of mind of such person, and because the change of a word may mean the difference between a binding contract and a mere expression of intention. Care must also be taken lest the court, out of consideration of equity or sympathy, make a contract for the parties where none existed, even though such contract might or would express their desires. Where the alleged contracting parties cannot testify, their acts loom large as compared with what witnesses say they said.' "

We also said in *Schulz* v. *Steffey*, 275 Mich. 409:

"While the required measure of proof is the same in cases of this type as in civil cases generally, none the less the nature of the litigation is such that it behooves courts to scrutinize the testimony closely in cases of this character and to weigh it and test it in the light of all the circumstances disclosed by the record. Estates of deceased persons should not be diverted in consequence of such agreements except upon proof which 'must be such as satisfied the mind and conscience of the court that the contract was made as claimed.' *Hiles* v. *First National Bank at Flint*, 237 Mich. 278; *Sieg* v. *Sendelbach*, 256 Mich. 456."

The record shows that the plaintiff knew that his father gave certain of his property away subsequent to the date of the alleged contract. Yet there is no showing that plaintiff at that time made any claim that this was in violation of his rights under the alleged contract. This gives rise to the inference that plaintiff did not think that there was a binding contract as charged. The fact that William G.

Kerns made *inter vivos* transfers inconsistent with the alleged agreement, while not conclusive, is contradictory of the existence in the mind of Mr. Kerns of any idea that he had made any binding contract as alleged here. The fact that Mr. Kerns made a will dated November 29, 1924, shortly after the date of the claimed agreement, and the disposition of the property was not upon the basis of the claimed agreement, supports the inference that he did not believe he had made a binding contract. *Sieg* v. *Sendelbach, supra.*

"While we hear chancery appeals *de novo,* we are mindful of the advantage possessed by the trial judge before whom the witnesses appear in person." *Halicki* v. *Halicki,* 244 Mich. 341.

See, also, *Moyer* v. *Hafner,* 272 Mich. 52.

The transaction as stated by the witnesses was not so unequivocally a contract as to exclude the idea that it was merely an expression of the decedent's future intention. Viewing the testimony with the caution imposed by the cases cited, and in the light of the surrounding facts and circumstances, we cannot say that the trial judge erred in his conclusion that the statements made by William G. Kerns on the occasion in question, and probably on other occasions, should be regarded as merely indication of his then testamentary intention, rather than as making a binding contract. We are in accord with the findings of the circuit judge.

The remaining assignment of error deals with the admissibility of evidence. The trial court excluded certain testimony offered by plaintiff as equally within the knowledge of the deceased and, therefore, incompetent under 3 Comp. Laws 1929, § 14219 (Stat. Ann. § 27.914). Plaintiff contends that defendant

completely waived the operation of the statute by calling Mrs. Harriet Kerns and going into matters which were equally within the knowledge of the deceased, and by cross-examining plaintiff upon similar matters. Defendant claims, and the trial court held, that the waiver was limited to those matters thus brought out by defendant. While it is extremely doubtful if the operation of the statute was waived to the extent claimed by plaintiff, it is unnecessary for us to decide the question in this case. The statute (3 Comp. Laws 1929, § 14159 [Stat. Ann. § 27.853]) dealing with the exclusion of evidence in chancery cases provides:

"In all chancery cases, the court shall rule upon all objections to the competency, relevancy or materiality of testimony, or evidence offered, the same as in suits at law; and in all cases where the court is of the opinion that any testimony offered is incompetent, irrelevant, or immaterial, the same shall be excluded from the record: *Provided, however,* That if the testimony so offered and excluded is brief, the court may in its discretion permit the same to be taken down by the stenographer separate and apart from the testimony received in the case; and in case of appeal, such excluded testimony may be returned to the appellate court under the certificate of the trial court: *Provided further,* That where such excluded testimony is not taken and returned to the Supreme Court on appeal, if upon the hearing of such appeal, the Supreme Court shall be of the opinion that any such testimony is competent and material, it may order the same to be taken by deposition, or under a reference, and returned to said court."

To preserve the question of the admissibility of excluded testimony in chancery cases for proper review, correct practice requires that a special record of the offered testimony should be made. *Michiana*

*Shores Estates, Inc.,* v. *Robbins,* 290 Mich. 384. In *Counihan* v. *Hayes,* 246 Mich. 390, we said:

"Counsel should have taken such testimony under the provisions of 3 Comp. Laws 1915, § 12493, or at least have asked the court for leave to do so. It was not sufficient to state upon the record what the testimony would show and then rely upon an exception to its exclusion. Had the practice been followed we would now have such testimony, and, if material and competent, could use it. One purpose of the statute is to prevent hearing chancery appeals piecemeal, and we decline to reverse the decree for the reason mentioned, and to remand the case to take further evidence."

In the case at bar, there is no showing on the record of what the witnesses would have said had they been permitted to testify. The excluded testimony was not taken under the provisions of the statute, nor was the court asked for leave to do so. Under these circumstances, this court will not exercise its discretion to have the testimony taken and sent here.

The decree is affirmed, with costs to defendants.

CHANDLER, C. J., and NORTH, STARR, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred. WIEST, J., did not sit.