SUNDAY v. LEVERSE.

1. SPECIFIC PERFORMANCE—BURDEN OF PROOF—CARE OF ELDERLY COUPLE—EVIDENCE.

In suit to set aside transfers of property, made by elderly decedent about three months prior to his death, evidence *held,* insufficient to sustain plaintiffs' burden of proving that decedent had promised to leave them the property, as claimed, in return for their care of himself and invalid wife who had predeceased decedent by some six months and who was the mother of one of the plaintiffs.

2. COSTS—BRIEF.

No costs are allowed appellees upon affirmance of decree, where they did not file a brief.

Appeal from Saginaw; Holland (Robert T.), J. Submitted April 11, 1947. (Docket No. 77, Calendar No. 43,657.) Decided June 27, 1947.

Bill by George Sunday and wife against Ida Leverse and another to set aside transfers of property made by George F. Hilburn, deceased, and to require defendants to turn such property over to plaintiffs. Bill dismissed. Plaintiffs appeal. Affirmed.

*Ryan, Doozan & Scorsone,* for plaintiffs.

BUTZEL, J. George F. Hilborn, referred to herein as the decedent, lived with his invalid wife Emma in a house owned by him in Carrollton, Michigan. He also owned three vacant lots a half block distant from his home. Decedent was over 80 years old and suffered from palsy; nevertheless, he was able to get about and required only a very limited amount of care. His invalid wife, however, was in need of considerable assistance which he was unable to give her because of his advanced years. In July, 1938, defendant George Hilborn, a nephew of decedent, and wife were persuaded to make their home with the elderly couple and to care for them for the balance of their lives; and in return therefor, decedent deeded his house and three lots to Mr. and Mrs. George Hilborn. This arrangement lasted until the latter couple separated seven months later as the result of their own domestic difficulties, at which time they reconveyed the property to the decedent. Shortly thereafter, plaintiffs herein, George Sunday and Mary, his wife, who was the daughter of Emma Hilborn by a previous marriage, went to live with the old couple. Plaintiffs allege in their bill of complaint that decedent promised them that if upon their marriage they would come and live with him and support him and his wife, that on his death he would leave them all of the property, of which he died seized, in payment for his care and maintenance. Most of the furnishings

in the home were owned by the old couple. They each received a small old age pension allowance monthly, but otherwise they had no income.

In August, 1942, Emma Hilborn died. Decedent continued living with plaintiffs until October of that year when he left for Kendall, Michigan, to make his home with his sister, Ida Leverse, defendant herein. On November 27, 1942, decedent sold his house in Carrollton to the Bishop of the Catholic Church for $1,600, taking $800 in cash and a note for the same amount made payable to defendant Leverse. On that same day he gave a quitclaim deed of the three lots to defendant George Hilborn. When decedent sold the house he stated that he was leaving the household furnishings to plaintiffs. The latter claim that the furnishings are worth only $100. Defendants state that they are worth four or five times that amount. George F. Hilborn died on February 21, 1943, at the age of 85. Plaintiffs continued to live in the house and paid rent to the Bishop whose title they concede.

The testimony is conflicting as to whether plaintiffs properly maintained and supported decedent. There is proof that decedent was dissatisfied with the treatment he received from plaintiffs; that he complained that he frequently had to cook his own meals; and that he sometimes visited neighbors to get something to eat. Also, there was testimony to the effect that the house was anything but peaceful and quiet. It is not clear whether plaintiffs claim that decedent promised to will the disputed property to them or not. They allege, however, that decedent fraudulently disposed of the property during his lifetime and that defendants are equally guilty of fraud. They claim that they are entitled to recover the note in the hands of defendant Leverse, the payments made thereon, and the three lots deeded to defendant Hilborn.

Plaintiff Mary Sunday testified that she had filed a petition for the probate of decedent's estate, but had failed to take any further steps after learning that the vacant lots had been deeded to defendant Hilborn. Conceivably, this might indicate that plaintiffs regarded their claim as a debt due from the estate. The strongest testimony in support of plaintiffs' claims is that of George Ingram, a brother of Mrs. Sunday, who stated that he had heard decedent tell plaintiffs prior to their marriage that he wanted them to get married and to come and make their home with decedent and his wife and that "when we pass away this property all belongs to you." When asked what property the decedent referred to, the witness stated: "All the property he had there was the understanding I had of it." Decedent's statement did not specifically include the three lots; and the fact that the statement was made in his home might indicate that he had in mind only the house and its furnishings. Another witness stated that she had heard decedent tell plaintiffs that "they were to get a square deal for taking care of him and the property would be theirs, the house where they were living at that time." We are not persuaded that plaintiffs have sustained the burden of proving that decedent promised to leave them the three lots.

It cannot be contended that there was anything very unusual in plaintiffs' support of Emma Hilborn, who was Mrs. Sunday's mother. Nor was it unnatural for decedent to have given the note to his sister, Ida Leverse, with whom he spent his last months. By the same token, he may have felt obligated to his nephew, George Hilborn, who had cared for him and his wife in 1938 and who was a frequent visitor thereafter. We regret that the opinion of the trial judge was not included in the record, in the absence of which we can only draw

inferences of fact from the decree dismissing the bill of complaint. The record, however, does not convince us that the judge was in error. The judge had the opportunity of seeing and hearing the witnesses and of judging their credibility. Plaintiffs seek to have the transfers made by the decedent set aside and an order entered requiring defendants to turn over the disputed property to them. The alleged oral agreement and the fulfillment thereof by plaintiffs have not been proved by clear and convincing evidence, as the result of which plaintiffs are not entitled to the relief they seek herein. *Vandercook* v. *Kurtz,* 297 Mich. 87; *Kerns* v. *Kerns,* 303 Mich. 23. This does not preclude plaintiffs from pursuing any other method, if there is any, to collect any sums they claim are due them.

The decree dismissing the bill is affirmed, without costs, defendants not having filed a brief.

CARR, C. J., and BUSHNELL, SHARPE, BOYLES, REID, NORTH, and DETHMERS, JJ., concurred.