GROSS v. HOUSNER.

1. SPECIFIC PERFORMANCE—ESCROW—FINDINGS OF COURT—EVIDENCE.
   In suit for specific performance of an escrow agreement whereby plaintiffs were to obtain delivery of deed to house and lot upon death of 80-year-old grantor for whom they were to pay certain bills, assume his living expenses and, upon his death, pay his funeral and burial expenses, findings of trial court that escrow agreement was valid, that the subsequent destruction of the deed in no way affected the rights of plaintiffs, and that there was no written cancellation of the rights of plaintiffs nor rescission of the escrow agreement *held*, supported by evidence.

2. DEEDS—DELIVERY—ESCROW.
   When a deed which has been duly executed has been put into the hands of a third person to be delivered to the grantee at a future time or upon the performance of certain conditions or the happening of some event, it is delivered in escrow and the deed will not be effective unless the condition be performed or the event happens.

3. SAME—DELIVERY IN ESCROW—ESTATE OF GRANTOR AND GRANTEE.
   Where a grantor makes a deed to another and deposits it with a third party, to be held by such third party until the grantor's death and then delivered to the grantee therein named, the grantor reserving no dominion or control over the deed during his lifetime, a valid delivery is thereby made and an immediate estate is vested in the grantee, subject to a life estate in the grantor.

---

REFERENCES FOR POINTS IN HEADNOTES

[2] 16 Am. Jur., Deeds, § 123.
[2, 4] Necessity of strict compliance with conditions of escrow. L.R.A. 1916A, 502.
[3] 16 Am. Jur., Deeds, §§ 143, 147.
[3] Delivery of deed to third person to be delivered to grantee after grantor's death. 52 A.L.R. 1222.
[4] Rights and remedies where depositary fails or refuses to deliver instrument or property placed in escrow, notwithstanding performance of conditions of delivery. 95 A.L.R. 293.
[7] 19 Am. Jur., Estoppel, §§ 83, 84.

4. SPECIFIC PERFORMANCE—ESCROW—CONDITIONS PRECEDENT—DELIVERY—DEEDS.

    Where grantor delivered a deed to property to a third party and reserved no dominion or control over the deed and grantees either fully performed, or were prevented by the grantor or administrator of his estate from making full performance of, the conditions precedent to delivery to them, they were entitled to specific performance of escrow agreement relative to delivery of deed.

5. SAME—DECREE—PAYMENT OF BILLS—LIENS.

    Where decree granted plaintiffs specific performance of escrow agreement and required them to pay certain bills, such bills are a lien on their title and require prompt payment.

6. APPEAL AND ERROR—SEPARATE RECORD—LEAVE OF COURT—DISCRETION OF COURT.

    Where separate record was not made of testimony excluded in chancery case and no leave asked to do so, nor showing made on the record of what the witnesses would have said had they been permitted to testify, the Supreme Court will not exercise its discretion to have the testimony taken and sent to it (3 Comp. Laws 1929, § 14159).

7. ESTOPPEL—SPECIFIC PERFORMANCE OF ESCROW AGREEMENT—DEEDS—TENANCY—CREDITORS.

    Plaintiffs seeking specific performance of escrow agreement whereby they would obtain delivery of deed to house and lot formerly owned by administrator's decedent were not estopped from making such claim by reason of indication in ouster proceedings that they were decedent's tenants and by filing a claim in the probate court indicating they were creditors of the deceased, where the estate has not been misled nor done anything to its detriment.

Appeal from Ingham; Coash (Louis E.), J. Submitted June 10, 1948. (Docket No. 59, Calendar No. 44,015.) Decided October 4, 1948.

Bill by Robert F. Gross and wife against Paul Housner, administrator of the estate of Benjamin Robinson, deceased, and others for specific performance of an escrow agreement. Decree for plaintiffs. Defendants appeal. Affirmed.

*Archibald D. Jones* and *Arthur L. Kramer,* for plaintiffs.

*Walter O. Estes,* for defendants.

Reid, J. The bill of complaint was filed in this case by plaintiffs for specific performance of an escrow agreement and for other relief. Defendant administrator denied that the plaintiffs are entitled to specific performance. From a decree for plaintiffs, defendant administrator appeals.

On or about March 29, 1946, an oral agreement was made by plaintiffs with decedent Benjamin Robinson whereby plaintiffs were to become the owners of the premises designated as 1220 Allen street in Lansing, Michigan, the house and lot owned and occupied by said Benjamin Robinson. Under the agreement the plaintiffs were to keep Mr. Robinson's house, care for him, pay certain specified bills, assume his necessary living expenses from time to time and upon his death to pay his funeral and burial expenses, in return for which plaintiffs were to receive title to the above premises, together with the household goods. On said day, March 29, 1946, plaintiffs went into possession of the premises.

On April 12, 1946, plaintiffs, Robert F. Gross and Elaine Gross, his wife, went with said Benjamin Robinson, a man of then 80 years of age, to the office of Walter O. Estes, attorney. A quitclaim deed was drawn wherein Benjamin Robinson, a single man, conveyed lots 100 and 101 of Parkview Land Company's Addition to the city of Lansing (the premises known as 1220 Allen street) to plaintiffs. Mr. Robinson deposited said deed in the hands of Walter O. Estes, attorney, as escrow agent, without reserving any right to recall or control but with instructions to deliver the same for record only upon his (Mr.

Robinson's) death. The escrow agreement, exhibit A, is as follows:

## "ESCROW AGREEMENT

"It is hereby agreed by and between Ben Robinson, as first party, and Robert F. Gross and Elaine Marie Gross, as second parties, that the certain quitclaim deed executed by the first party to the second parties be and hereby is deposited with Walter O. Estes, in escrow to be delivered for record only upon the death of the first party, it having been executed and delivered subject to this escrow agreement between the parties.

"The purpose of this escrow is to guarantee the care and support of the first party by the second parties during first party's lifetime, and the payment by the second parties of the first party's burial expenses and a balance of $55 due the Robinson-Barbier Funeral Home, and $80 due the Edward W. Sparrow Hospital.

BEN ROBINSON<br>
First Party<br>
ROBERT F. GROSS<br>
Second Party<br>
ELAINE MARIE GROSS<br>
Second Party

"WALTER O. ESTES
"MILDRED CHAMBERLAIN"

On April 16, 1946, a disagreement arose between Mr. Robinson and the Grosses because plaintiffs, following doctor's orders, refused to give Mr. Robinson money to buy beer or whiskey. Mr. Robinson, having obtained intoxicants from some other source, had become unruly and was found by Mr. Gross lying in the street. Mr. Robinson refused to return home with Mr. Gross when he was found in that condition and demanded that he be taken to the police. He was taken to the Lansing police, who advised Mr. Gross to take him to Mason.

Mr. Robinson was taken to the county jail at Mason because he was ill and the Grosses were attempting to safeguard him. While Mr. Robinson was in the jail at Mason, Mr. Gross called for him and attempted to get him to return home. Mr. Robinson remained at the jail at Mason without any charge or complaint against him until Saturday, April 20, 1946, at which time he returned to Lansing with one Clarence Patrick and his (Robinson's) grandson, Russell Post. Russell Post brought Mr. Robinson from the county jail in Mason to his (Post's) home in Lansing because Mr. Robinson did not want to return to his own house until he had removed the Grosses therefrom, due to the disagreement he had had with the Grosses. However, Russell Post had five children in his four-room house and there was not room for Mr. Robinson so he told Mr. Robinson that he (Mr. Robinson) would have to go back into his own home. On April 21, 1946, Russell Post had plaintiffs come after Mr. Robinson and take him back to 1220 Allen street. Decedent was there only until about April 26, 1946, when he was taken at the request of his daughter, without objection from the Grosses, to Clarence Patrick's home, where he stayed until April 29, 1946, at which time he was taken to the hospital. He died April 30, 1946.

On April 22, 1946, Clarence Patrick had accompanied decedent Robinson to the office of the escrow agent where it is claimed that Robert F. Gross asked that the escrow papers be destroyed. (Mr. Gross testified that he did not ask to have the escrow papers destroyed.) Decedent Robinson requested destruction of the papers and the escrow agent Estes destroyed the deed in the presence of decedent Robinson and Clarence Patrick (but not in the presence of Gross) and made some notations on the escrow agreement. Decedent on April 19, 1946, gave Clarence Patrick written authority to start proceed-

ings to evict Grosses from the premises, and on the 29th Clarence Patrick started summary ouster proceedings.

The children of the deceased were made parties to the proceeding and have appeared by the same attorney who represents the administrator of the Robinson estate.

Defendants claim that the escrow agreement of April 12, 1946, is not valid and binding, and that the plaintiffs did not fully perform the agreement, and further claim that the plaintiffs are estopped from claiming title under the escrow agreement by their conduct in rescinding the agreement. Plaintiff Gross denies that he consented to the cancellation of the deed and denies rescinding the contract.

The trial judge found that the agreement, exhibit A, was valid.

The trial judge further found that in this case the destruction of the deed in no way affected the rights of plaintiffs and that there was no evidence of any written cancellation of the rights of plaintiffs.

The trial judge further found that the written agreement, exhibit A, was not in fact rescinded and that it is binding upon the heirs and administrators of the estate of the decedent. A careful review of all the testimony convinces us of the correctness of the above findings on the part of the trial court. The testimony is very clear that Elaine Gross did not consent to any rescission. She seems to have had an interest by the entireties under the deed.

At the time of making the agreement, exhibit A, the decedent was 80 years of age. The plaintiffs did everything within their power to take care of him and during the brief period of his remaining lifetime they carried out their agreement with him.

In *Cook* v. *Sadler*, 214 Mich. 582, we said at page 586:

"On the question of depositing deeds in escrow it is observed by Gates on Michigan Real Property, § 547, that:

" 'When a deed which has been duly executed has been put into the hands of a third person to be, by him, delivered to the grantee at a future time or upon the performance of certain conditions or the happening of some event, it is said to be delivered "in escrow" and the deed will not be effective unless the condition be performed or the event happens, and the Michigan courts have consistently held that where a grantor makes a deed to another and deposits the deed with a third party, to be held by such third party until the grantor's death and to be delivered to the grantee named in the deed, the grantor reserving no dominion or control over the deed during his lifetime, a valid delivery is thereby made and an immediate estate is vested in the grantee, subject to a life estate in the grantor.' "

In the case at bar, the conditions set forth in the escrow agreement were either fully performed by the grantees or the grantees were prevented from making a full prformance either by the actions of the grantor or by the administrator of the grantor's estate following the grantor's death.

The decree appealed from required plaintiffs to pay certain specified bills. These are a lien on plaintiffs' title and require prompt payment.

Defendants claim that the trial judge improperly refused to permit defendants' attorney, Mr. Estes, the escrow agent, and his secretary, to testify regarding nonperformance by the plaintiffs and the execution of an agreement to rescind the escrow agreement. The basis for such claim on defendants' part is as follows: After plaintiffs had given testimony that they had paid $5 to Estes on the occasion of drafting the deed and the escrow agreement on April 12th, the following occurred:

"*Mr. Estes:*   *   *   *   I do not know whether he paid it—he has testified that he did but he has no proofs to show that but I will not deny it because I don't recall but he should have a receipt if he did. I would deny that there was an attorney and client relationship until he could show that.

"*The Court:* Of course, he can testify to that but until it is proven otherwise—

"*Mr. Estes:* Well, on the theory that it might be construed as an attorney and client relationship, to be consistent with that theory, I could not inquire into any conversation that I had unless he consented to it.

"*The Court:* That is right. If he paid for the service, he has the right, he is the only one that can testify to it."

Later on and apparently at the conclusion of plaintiff's case, there is this in the record:

"(Testimony of Walter O. Estes, the escrow agent, and Mildred Chamberlain McDonough, his secretary, was offered on the points of rescission and abandonment of the contract by the plaintiffs and nonperformance by the plaintiffs, but the court ruled that such testimony was in the nature of confidential communication because plaintiff, Robert F. Gross, had paid Walter O. Estes, a fee of $5 at the time of the drawing of the escrow agreement and the deed that was held in escrow)."

The record does not show any effort on the part of Estes to have the testimony of himself and his secretary taken in a separate record.

The statute dealing with the exclusion of evidence in chancery cases (3 Comp. Laws 1929, § 14159 [Stat. Ann. § 27.853]), provides:

"In all chancery cases, the court shall rule upon all objections to the competency, relevancy or materiality of testimony, or evidence offered, the same as in suits at law; and in all cases where the court

is of the opinion that any testimony offered is incompetent, irrelevant, or immaterial, the same shall be excluded from the record: *Provided, however,* That if the testimony so offered and excluded is brief, the court may in its discretion permit the same to be taken down by the stenographer separate and apart from the testimony received in the case; and in case of appeal, such excluded testimony may be returned to the appellate court under the certificate of the trial court: *Provided further,* That where such excluded testimony is not taken and returned to the Supreme Court on appeal, if upon the hearing of such appeal, the Supreme Court shall be of the opinion that any such testimony is competent and material, it may order the same to be taken by deposition, or under a reference, and returned to said Court."

In *Kerns* v. *Kerns,* 303 Mich. 23, we said at page 33:

"There is no showing on the record of what the witnesses would have said had they been permitted to testify. The excluded testimony was not taken under the provisions of the statute, nor was the court asked for leave to do so. Under these circumstances, this Court will not exercise its discretion to have the testimony taken and sent here."

In the *Kerns Case,* page 33, we also quoted with approval from *Counihan* v. *Hayes,* 246 Mich. 390, 392, as follows:

"It was not sufficient to state upon the record what the testimony would show and then rely upon an exception to its exclusion."

Under all the circumstances, we find no necessity for sending the case back to take further testimony.

Defendants further claim that plaintiffs in the proceeding before the circuit court commissioner indicated that they (plaintiffs) were tenants and by filing a claim in probate court indicated that they

were creditors of the deceased and by their inquiries as to what the premises could be bought for, took a position inconsistent with a claim of ownership. In none of these particulars was the estate misled nor has it done anything to its detriment. There is nothing in the record to convince us that the principle of estoppel should be applied against plaintiffs. *Odgers* v. *Lentz*, 319 Mich. 502.

The other questions raised do not merit a detailed discussion. The decree appealed from is affirmed. Costs to plaintiffs.

BUSHNELL, C. J., and SHARPE, BOYLES, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.