MOYER *v.* HAFNER.

1. Specific Performance—Discretion of Court.
    Specific performance is not a matter of course but rests in the sound judgment and discretion of the court under all the circumstances of each case and it is not arbitrary and capricious but regulated by well-settled principles.

2. Same—Contracts—Mutuality—Certainty—Performance.
    In order that specific performance may be granted of a parol contract, it must be mutual and the tie reciprocal and it must be certain in all essential particulars; there must be acts of part performance unequivocally referring to and resulting from the agreement which, as set up in the bill of complaint, must appear to be the one claimed to have been performed.

3. Evidence—Admissions—Death.
    Proof of admission is the most unreliable known to law, should be received with caution and subjected to careful scrutiny; *a fortiori* where claimed admission is that of one deceased, caution should deepen into suspicion and, without corroboration, is of little value.

4. Appeal and Error—Chancery Appeals Heard De Novo.
    While the Supreme Court hears chancery appeals *de novo*, it is mindful of the advantage possessed by the trial judge before whom the witnesses appear in person.

5. Contracts—Specific Performance—Evidence.
    In suit for specific performance of an alleged parol agreement by intestate to leave all his property to plaintiff, if she would care for deceased during his lifetime, evidence, even when viewed as favorably to plaintiff as is consistent with the great caution required in such cases *held*, insufficient to establish alleged contract.

Appeal from Cass; Warner (Glenn E.), J. Submitted April 9, 1935. (Docket No. 118, Calendar No. 38,278.) Decided May 17, 1935.

Bill by Nellie Marlow Moyer against Leslie Hafner, administrator of the estate of David Schipporeit, deceased, and others for specific performance of an alleged oral agreement for payment for work and care of decedent. Bill dismissed. Plaintiff appeals. Affirmed.

*Carl E. Hoffman* (*Leo W. Hoffman* and *Clare E. Hoffman*, of counsel), for plaintiff.

*Fritz Hailer* and *Elias P. Harmon*, for defendants.

BUSHNELL, J.  Plaintiff appeals from a decree dismissing her bill for specific performance of an alleged oral contract under which she claims she was to work and care for decedent during his lifetime, and at his death have all of his property. David Schipporeit, the decedent, was a bachelor with no relatives in this country, who owned and farmed 80 acres of land in Cass county worth, with its personal property, about $5,000. Plaintiff in 1928 was 41 years of age, divorced and living with her boy and girl on a nearby farm where she was employed as a housekeeper, when she met decedent who was then 55 years old. After some discussion she began to work for decedent, continuing until his death which followed an accident in 1932. Decedent left no will. Plaintiff, unaided by counsel, unsuccessfully sought compensation for her services by filing a claim against decedent's estate, and later commenced this action.

Appellant's questions as to the admission of improper evidence might have been avoided by the granting of defendants' motion to dismiss, but the court preferred to hear defendants' testimony.

Mr. Justice Potter held in *Woods* v. *Johnson,* 266 Mich. 172:

"Specific performance is not a matter of course but rests in the sound judgment and discretion of the court under all the circumstances of each particular case. Such discretion is not arbitrary and capricious but regulated by well-settled principles. The contract or agreement sought to be enforced must be mutual and the tie reciprocal. It must be certain in all essential particulars. There must be acts of part performance, unequivocally referring to and resulting from the agreement. The agreement set up in the bill of complaint must appear to be the one claimed to have been performed."

A little later we held in *Wild* v. *Wild,* 266 Mich. 570:

"Proof of admission is concededly the most unreliable known to the law. It should be received with caution and subjected to careful scrutiny as no class of evidence is more subject to error or abuse. Witnesses having the best motives are generally unable to state the exact language of an admission and are liable by the omission or change of words to convey a false impression of the language used. No other class of testimony affords such tendencies or possibilities for unscrupulous witnesses to torture the facts or commit open perjury as it is often impossible to contradict their testimony at all or at least by any other witness than the party himself. 2 Jones, Commentaries on Evidence, § 295.

" '*A fortiori* where the admission is that of one deceased the caution should deepen into suspicion for reasons that are obvious and, without corroboration, is of little value.' 2 Jones, Commentaries on Evidence, § 295.''

While we hear chancery appeals *de novo,* we are mindful of the advantage possessed by the trial judge before whom the witnesses appear in person. *Halicki* v. *Halicki,* 244 Mich. 341.

Because of timely objections, as to testimony equally within the knowledge of deceased,* plaintiff's case must necessarily rest largely on the testimony of others. Plaintiff's 12-year old son and 13-year old daughter testified as to statements of the deceased made in their presence when these witnesses came to the farm several years before Schipporeit's death.

"He said that if my mother stayed there and took care of the place it would be hers when he died."

Other witnesses testified to like effect, such as:

"If she will stay here and outlive me and put away, she will have it all, what I have got."

"When I go," he says, "she gets everything."

"And then he told about he couldn't pay her any wages but that in the event of his death before hers, she was to get the place and property."

"He said that Mrs. Marlow was the only one that really was ever entitled to it; that nobody else had never done anything for him."

"He intended that Mrs. Marlow would have it."

The testimony also shows that plaintiff did the housework; and she and the children helped with the chores, receiving their living and, at one time, according to the testimony of the daughter, Schipporeit cared for her aunt, uncle and three nephews as well. Mrs. Marlow turned over to Schipporeit from time to time money she received from the government as guardian of the children.

The testimony of defendants' witnesses as to Schipporeit's contradictory statements was received after objections, and subsequently determined by the court to be inadmissible as not made in the

---

* See 3 Comp. Laws 1929, § 14219.—Reporter.

presence of plaintiff. The propriety of such acceptance or rejection need not be determined if we confine ourselves to the proposition: Did the evidence of plaintiff establish a contract?

An examination of the testimony viewed most favorably to plaintiff does not convince us that plaintiff has established a contract. That she was of great help to the physically and matrimonially handicapped decedent is clear, but she also received her living and eventually that of her children. If she has not been fully compensated, she has an adequate remedy at law. Her services were not of an unusual character, nor did she change her condition in life by working for Schipporeit. She had been doing similar work elsewhere and was always at liberty to make other arrangements if she chose to do so.

As recently said by Mr. Justice Fead in *Paris v. Scott*, 267 Mich. 400:

"In cases of this kind, the testimony of witnesses must be viewed with great caution, because of the frailties of memory, the improbability of repeating the precise language of a person since deceased, of fairly expressing the full state of mind of such person, and because the change of a word may mean the difference between a binding contract and a mere expression of intention. Care must also be taken lest the court, out of considerations of equity or sympathy, make a contract for the parties where none existed, even though such contract might or would express their desires. Where the alleged contracting parties cannot testify, their acts loom large as compared with what witnesses say they said."

We can see quite a difference between the claimed agreement and that described by Mr. Justice Wiest in *Puddy v. Sharpe*, 248 Mich. 147. The exercise of

the caution therein suggested as to cases of this character requires an affirmance of the decree of the trial court, and it is so affirmed, with costs to appellees.

POTTER, C. J., and NELSON SHARPE, NORTH, FEAD, WIEST, BUTZEL, and EDWARD M. SHARPE, JJ., concurred.