## McDANIELS v. SCHROEDER.

1. Specific Performance—Parol Contract—Discretion of Court.
   Specific performance of a parol contract is not a matter of course, but rests in the sound judgment and discretion of the court under all the circumstances of each case, and it is not arbitrary and capricious, but regulated by well-settled principles.

2. Same—Contracts—Mutuality—Certainty—Performance.
   Parol bilateral contract, to be specifically enforceable, must be mutual and a tie reciprocal, it must be certain in all essential particulars, and there must be acts of part performance unequivocally referring to and resulting from the agreement which, as set up in the complaint, must appear to be the one claimed to have been performed.

3. Appeal and Error—Nonjury Cases—Findings of Fact.
   Findings of fact by a trial court in a nonjury action will not be reversed on appeal unless the findings are clearly erroneous (GCR 1963, 517).

4. Specific Performance—Oral Contract To Make A Will—Evidence.
   Evidence presented in action for specific performance of decedent's oral contract to make a will in return for plaintiff's care during decedent's remaining years where decedent said he "promised his stuff" several times held, sufficient to show decedent clearly manifested an intent to agree with plaintiff and that he, in fact, believed he did agree with plaintiff that he would provide for her upon his death.

References for Points in Headnotes
[1, 2]  49 Am Jur, Specific Performance § 21.
[3, 7]  5 Am Jur 2d, Appeal and Error § 839 et seq.
[4–6]  57 Am Jur, Wills § 192 et seq.

5. Contracts—Oral Contract To Make A Will—Declarations—
Presence of Promisee.

Declarations of the promisor which show that he had made a
contract to make a will may be sufficient to establish the
existence of such a contract, even if such declarations are
not made in the presence of the promisee.

6. Specific Performance—Oral Contract To Make A Will—Evi-
dence.

Evidence which showed plaintiff cared for decedent for about
10 years in her home, decedent paid only $10 a week to plain-
tiff for rent, plaintiff paid all household bills, and decedent's
repeated promissory statements to witnesses that he had
"promised his stuff" to plaintiff *held,* sufficient to support find-
ing that there was a specifically enforceable oral contract to
make a will, especially where extreme demands placed on
plaintiff by decedent caused her to change her mode of life
and to perform unusual duties.

7. Appeal and Error—Chancery Cases—Evidence.

An appellate court will uphold the decision of a lower court in
a chancery case on an issue of fact, where the evidence clearly
does not proponderate in an opposite direction.

Appeal from Calhoun; Ryan (Ronald M.), J.  Sub-
mitted Division 3 October 4, 1967, at Grand Rapids.
(Docket No. 3,281.)  Decided March 18, 1968.

Complaint by Irene McDaniels against Joseph E.
Schroeder, administrator of the estate of Julius Em-
merich, deceased, for specific performance of an
oral contract to make a will.  Judgment for plaintiff.
Defendant appeals.  Affirmed.

*Golden & Golden,* for plaintiff.

*Schroeder, Schroeder & DeGraw,* for defendant.

Fitzgerald, P. J.  Plaintiff, a 71-year-old woman,
brought suit in the Calhoun county circuit court
against defendant, who is the administrator of the

estate of Julius Emmerich, for specific performance of an alleged oral contract to make a will. Plaintiff was barred from testifying by the dead man's statute, but it was shown at the trial that decedent was an elderly German man who lived with plaintiff, died in her home, and relied heavily on her for transportation and companionship until the date of his death.

Testimony at the trial was given by Mr. Hendricks, plaintiff's nephew, who stated that on one occasion decedent "promised to leave all that he had to Irene [plaintiff] because she had done so much for him and had taken care of him so well," and that another time decedent told Mr. Hendricks that he "intended to buy her [plaintiff] a car of this type [Volkswagen] because her other car had worn out."

Mrs. Margaret Eipper, a friend of both plaintiff and deceased, often visited with deceased and testified that she talked with deceased about household bills, and deceased said that plaintiff paid such bills while deceased paid her $10 a week, stating to Mrs. Eipper, "That's just now, but later on I promised to give her all my stuff anyway." Mrs. Eipper also testified that she often questioned deceased about making a will and that deceased stated on one occasion, "I promised all my stuff to Irene," and on another occasion, "I promised I would make a will, I left everything to Irene."

No will was made. Plaintiff did not know of any of these statements made by deceased to Mrs. Eipper or to Mr. Hendricks. From this evidence and testimony, the trial court concluded that an oral contract was established by decedent to make a will of all his property definite enough to entitle plaintiff to specific performance. We will decide the issue of whether plaintiff has proved all the elements necessary to support such a decision.

The requirements set by the Supreme Court as necessary to prove parol contracts are found in the case of *Woods* v. *Johnson* (1934), 266 Mich 172, 174, 175:

"Specific performance is not a matter of course but rests in the sound judgment and discretion of the court under all the circumstances of each particular case. Such discretion is not arbitrary and capricious but regulated by well-settled principles. *The contract or agreement sought to be enforced must be mutual and a tie reciprocal. It must be certain in all essential particulars. There must be acts of part performance, unequivocally referring to and resulting from the agreement. The agreement set up in the bill of complaint must appear to be the one claimed to have been performed.*" (Emphasis supplied.)

It must be remembered that the findings of fact by a trial court in a nonjury action such as this will not be reversed on appeal unless the findings are clearly erroneous. See GCR 1963, 517.

We shall briefly examine the above requirements of *Woods, supra,* with a consideration of the law and the facts of this particular case. As noted above, plaintiff is barred from testifying by the "dead man's act", CLS 1961, § 600.2160 (Stat Ann 1962 Rev § 27A.2160).* The Supreme Court, in the case of *Teason* v. *Miles* (1962), 368 Mich 414, recognizes the difficulty in determining what was the actual agreement between a deceased person whose testimony is forever lost, and a party to the suit who is barred by the dead man's statute, the Court stating (p 416):

"Like most such agreements, this one was oral and, as far as is disclosed by the record, was not formally

---

* Repealed by PA 1967, No 263. See, currently, PA 1961, No 236, § 2166, as added by PA 1967, No 263 (Stat Ann 1968 Cum Supp § 27A.2166).

entered into in the presence of witnesses, nor was it ever subsequently affirmed by either party in the presence of the other party to the agreement and in the presence of others. In support of his claim, plaintiff relied upon proof of the services he rendered to his mother during her lifetime, statements made by her to others from which a fair inference of such asserted agreement could be drawn, and an undelivered letter in the mother's handwriting addressed to an attorney in which she expressed a desire for the preparation of a will which would have implemented such an agreement."

The Court in the *Teason Case,* quoting from *Paris* v. *Scott* (1934), 267 Mich 400, also places a heavy burden of proof upon the proponent of statements of witnesses as to what decedent stated and intended, recognizing that what conversations are remembered by witnesses often become blurred with the passage of time (p 417):

" 'In cases of this kind, the testimony of witnesses must be viewed with great caution, because of the frailties of memory, the improbability of repeating the precise language of a person since deceased, of fairly expressing the full state of mind of such person, and because the change of a word may mean the difference between a binding contract and a mere expression of intention. Care must also be taken lest the court, out of considerations of equity or sympathy, make a contract for the parties where none existed, even though such contract might or would express their desires. Where the alleged contracting parties cannot testify, their acts loom large as compared with what witnesses say they said.' "

Thus, plaintiff emphasizes that the witnesses *all* testified to conversations with decedent where he "promised" his things to Irene. Likewise, defendant urges that the court must carefully examine such testimony, as "promised" could be construed to be

a binding contract or only to be a "mere expression
of intention." Appellant also alleges that decedent's
repeated use of the word "promise" should not be
held to prove a contract, because decedent was of
foreign birth and had difficulty expressing himself
in the English language. However, we find that de-
ceased did say he "promised his stuff" several times.
We will not agree with appellant that he did not
promise and agree merely because he was not so
conversant with the English language to know that
the definition of "promise", as given in Black's Law
Dictionary, is different from the word "give", which
is what appellant would have us believe decedent
intended to say. We find that decedent clearly mani-
fested an intent to agree with plaintiff and that he,
in fact, believed that he did agree with plaintiff that
he would provide for her upon his demise.

Appellant cites several cases to this Court where-
in specific performance was denied and attempts to
draw parallels to the present case. Instead, we find
that the common thread running through these cases
is a lack of testimony showing relationships as close
as this one, insufficient promissory language, and
little evidence of agreement or contract which would
have motivated the plaintiff to render unusual serv-
ices. Appellant relies heavily on the case of *Moyer*
v. *Hafner* (1935), 272 Mich 52, for support of his
allegations. In the *Moyer Case,* the Supreme Court
found that decedent was a bachelor and plaintiff
was a neighbor who often had worked as a house-
keeper. She agreed to work for decedent, and did
so for 4 years. In denying specific performance to
plaintiff, the Court found that there was no contract
by stating (p 56).:

"That she was of great help to the physically and
matrimonially handicapped decedent is clear, but she
also received her living and eventually that of her

children. * * * Her services were not of an un-usual character, nor did she change her condition in life by working for [decedent]. She had been do-ing similar work elsewhere and was always at liberty to make other arrangements if she chose to do so."

The only testimony as to decedent's statements of-fered in the *Moyer Case* came from plaintiff's young children, and the Court chose to find them insuffi-cient. In the case before us, plaintiff's services were unusual in that she certainly changed her condition in life by permitting decedent to live with her for about 10 years, while driving him around south-western Michigan, feeding him, doing his laundry, paying for the rent and heat, and cleaning up after his urinary problems, which often resulted in strong odors throughout her home. It is also noted that the plaintiff in the *Moyer Case* "received her living and eventually that of her children," while in the present case plaintiff received only $10 a week from decedent while employed elsewhere.

It is appropriate now to quote from the case of *Applebaum* v. *Wechsler* (1957), 350 Mich 636, where-in the Court states (p 645):

"The question at this point is not the quantum of acts performed but the reason for their perform-ance. Was there, in fact, an agreement, pursuant to which these acts were performed, or were they mere-ly gestures of mercy, of kindness to a lonely and dis-traught old man?"

Relevant is plaintiff's statement in the present case made to Mrs. Eipper, to wit: "Well, I feel sorry for him. I have tried to help him. I feel sorry for him." But this does not mean that agreement can-not be based on feelings of mercy. Appellant also notes that following decedent's demise, plaintiff said to Mrs. Eipper, "I don't know anything about his will," and "I guess he didn't leave me anything, I

guess he didn't care to," in concluding that there was no agreement. Plaintiff's statement to Mrs. Eipper following decedent's death only revealed to this Court that she was greatly disappointed in not receiving a portion of decedent's estate. However, appellant would have us find that there was no possibility of an agreement as plaintiff never stated to Mrs. Eipper that an agreement existed. We refer to 1, Page on Wills, § 10.48, p 545:

"The declarations of the promisor [decedent] which show that he had made a contract [or an agreement] to make a will may be sufficient to establish the existence of such a contract, even if such declarations are not made in the presence of the promisee."

Plaintiff continued to care for deceased in many ways for about 10 years, in her home, and when we carefully consider the small amount of rent paid and the inferences to be drawn from decedent's repeated promissory statements to witnesses (*Teason* v. *Miles, supra*) we find evidence that there was an agreement to make a will between plaintiff and deceased. The Supreme Court stated in *In re Cramer's Estate* (1941), 296 Mich 44 (p 49):

"In the absence of other than mere declarations, the factor that the court considered was whether the person claiming the contract had changed the tenor of his life in performance thereof. If there is such a change as to be unusual for the average person, then the fair inference would be that the parties had a contract."

We find that the extreme demands placed on plaintiff by decedent in the instant case caused her to change her mode of life and to perform duties which would be unusual for the average person.

The agreement in this case admittedly turns on a close question of fact, but this Court does not find

difficulty in agreeing with the trial court's conclusion that an oral contract and agreement was created. The evidence clearly does not preponderate in a direction opposite the lower court's decision and we are persuaded to uphold that decision in granting specific performance to plaintiff.

Affirmed. Costs to appellee.

BURNS and HOLBROOK, JJ., concurred.