COOPER *v.* KLOPFENSTEIN

1. CONTRACTS—TIME OF THE ESSENCE—BREACH—RESCISSION.
   The innocent party may seek to have a contract rescinded where time is of the essence of the contract and the other party fails to perform within a reasonable time.

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 17 Am Jur 2d, Contracts §§ 334, 499, 508.
[2] 17 Am Jur 2d, Contracts § 332.
[3] 18 Am Jur 2d, Corporations §§ 174–177.

2. Contracts—Time of the Essence—Breach.

> Finding that defendant contractor had breached his contract was not clearly erroneous where the contract provided that time was of the essence, that the defendant would commence work immediately upon signing the contract and would work as rapidly as possible, there was a four-week period when no work was done, there was a three-month period when defendant did not have men or equipment on the job and the work contracted for had not been completed at the time of the trial court's decision.

3. Chattel Mortgages—Sale of Collateral—Purchaser's Right—Good Faith.

> Defendant who pledged his stock in a corporation he co-founded as security for a bank loan, was not entitled to redeem the stock when, on his default, the bank sold the stock in a private sale to the defendant's co-founders of the corporation where, although the defendant did not raise the issue, the trial court found that the buyers purchased the stock in good faith, because a purchaser in good faith takes free of all claims (MCLA § 440.9504).

Appeal from Hillsdale, Robert W. McIntyre, J. Submitted Division 2 November 4, 1970, at Lansing. (Docket No. 8272.)   Decided January 20, 1971.

Complaint by Robert H. Cooper and Mary Cooper, his wife, against Floren Klopfenstein for rescission of a contract. Judgment for plaintiffs. Defendant appeals. Affirmed.

*Dimmers, Dimmers & Loren,* for plaintiffs.

*Clay T. Brockman,* for defendant.

Before: Bronson, P. J., and Fitzgerald, and Churchill,* JJ.

Bronson, P. J. On February 10, 1965, plaintiffs and defendant, interested in developing certain plots

---

* Circuit judge, sitting on the Court of Appeals by assignment.

of land, entered into a written contract. The contract provided that plaintiffs were to furnish land, most of which they owned or were in the process of acquiring, and defendant was to furnish the labor and equipment to develop the land. In exchange for the consideration provided, plaintiffs and defendant were to receive shares of stock in the parties' newly formed corporation. In March of 1966, the contract was modified to enlarge the amount of land to be developed. Defendant was also given a promissory note by the corporation in the amount of $45,000. The contractual agreements between the parties were prepared primarily under the direction of the defendant, and the contracts expressly stated that time was of the essence.

The record reveals that the defendant subsequently pledged certain shares of his stock in the newly formed corporation to a commercial bank, as security for a private loan. The defendant defaulted on the loan and the bank sold the stock pursuant to their security agreement with the defendant. The sale of the stock was private, and the bank sold the stock to the plaintiffs. The purchase of the stock from the bank was made for the asking price established by the bank.

Plaintiffs subsequently filed suit, alleging that defendant had breached the contract by failing to proceed as rapidly as possible with the development of the land. Other specific allegations of defendant's breach of the written contract were also averred. Plaintiffs requested that the contract be declared null and void and that the defendant's rights under the contract be terminated. Plaintiffs also sought to be released from liability on the $45,000 note held by the defendant.

The cause was tried in Hillsdale County Circuit Court where the trial judge, sitting without a jury,

made the following findings of fact and rulings of law relevant to the issues on appeal:

"The following matters constitute the factual findings of this court which have been established by a preponderance of the proofs, and the ruling of this court upon the legal questions submitted. In light of the necessity that this court make a determination as to whether the defendant breached the contracts involved here, it is necessary that the court make a legal finding at this point that time was of the essence in this contract. The contract prepared under the direction of the defendant so provided in paragraph 16. 17 Am Jur 2d, Contracts, par 508, states:
" 'As a general rule, where time is of the essence of a contract, and one of the parties has not performed, and is not ready and able to perform his part of the agreement on the day fixed, the adverse party may elect to consider it at an end.'
This rule has been approved by the Supreme Court of the State of Michigan in *Bedford* v. *Tetzlaff*, 338 Mich 102 [1953], and *Brody* v. *Crozier* [1928], 242 Mich 660. It is argued by the defendant that since no dates certain for performance was [sic] set forth in the contractual instruments that the provision that time was of the essence is meaningless. This court cannot agree. The law is well settled without the necessity of citation that in construing a contract, the court shall not construe it piecemeal but rather as a whole. Paragraph 5 of the original agreement, plaintiffs' exhibit #1, provides that the contractor would commence work immediately upon the signing of the contract and continue the work to completion as rapidly as possible and without interruption excepting such as may be caused by weather conditions and other matters not within the control of the contractor. There was no showing on the part of the defendant in his proofs that earlier completion could not have been accomplished because of the factors beyond his control. The court

therefore applies the time is of the essence paragraph 16 to the provisions of paragraph 5 and rules that with respect to this comparison time was of the essence in so far as the plaintiffs herein were concerned. The court finds as a matter of fact that the defendant did not put forth his best efforts to complete the project within a reasonable time. The court finds there was a four-week period in the middle of the summer of 1966 in which no work was done and that the defendant did not have men or equipment on the job from September 1967 through December 1, 1967. Letters from attorneys employed by the plaintiffs, four in number, from August 26, 1966, through December 1, 1967, pointed out to the defendant that the work was not progressing with sufficient speed, pointed out to the defendant that the contract provided that time was of the essence, and threatened action for nullification if work was not resumed. There is no indication in the evidence that the defendant heeded these warnings by putting forth a greater effort. There was evidence, however, that at this time the defendant was engaged in a similar project known as Lake Diane in this general area and was moving men and equipment back and forth between the jobs in an apparent effort to mollify all owners.

"The court finds that the plaintiffs have established by a great preponderance of the proofs that the defendant has not completed the sanding of the beaches along the shoreline, the grading of lots, roads and the surfacing of roads, and roads have not been completed to the specifications of the Hillsdale County Road Commission. The photographs received in evidence being plaintiffs' exhibits #13 through #19, clearly illustrate the failure to sand beaches and the failure to remove stumps and debris from the waters' edge and the photographs received into evidence being plaintiffs' #9 through #11, #4 through #7, and #20 and #21, show that some of the planned roads have not even been

graded or cut to specifications. The testimony of Roy Rodd, a civil engineer, who is the head of the Hillsdale County Highway Department, was particularly telling on the point of the insufficiency of the roadways. It is clear that the roads as they exist will require a great deal of work before they are accepted by the County of Hillsdale for maintenance purposes. Under these circumstances it is most difficult to expect the sale of lots in this lakeshore subdivision.

"A flagrant violation of paragraph 10, plaintiffs' exhibit #1 was shown by a preponderance of proof.[1] The defendant in his testimony equivocated with respect to the existence of this policy, but finally admitted that the policy issued to the defendant and payable to Cooper February 16, 1965, lapsed in May of 1968."

On appeal, defendant alleges that the trial court erred by finding that the defendant had breached the contract. Defendant further contends that the trial court's finding that rescission of the contract would result in defendant being returned to the *status quo* constituted error. We disagree.

Time was specifically made the essence of the contract entered into by the parties. It is well recognized that when time is made of the essence of the contract and one of the parties fails to perform within a reasonable time, the innocent party may seek to have the contract rescinded. *Friedman* v. *Winshall* (1955), 343 Mich 647; *Bedford* v. *Tetzlaff* (1953), 338 Mich 102; *Brody* v. *Crozier* (1928), 242 Mich 660. After reviewing the record, we cannot conclude that the trial court's factual findings as to defendant's failure to perform to the satisfaction of this requirement, as well as other incidents of breach, were clearly erroneous. See *McDaniels* v.

---

[1] Paragraph 10 of the contract required defendant to carry a term life insurance policy payable to the plaintiffs.

*Schroeder* (1968), 9 Mich App 444; GCR 1963, 517.1.

The defendant's argument that the trial court's rescission of the contract will not return him to the *status quo* is refuted by the record as well as the trial court's finding:

"The court holds as a matter of proven fact that the defendant is *in statu quo* at this time. He received the proceeds of a number of lake lots which he choose [sic] to purchase an airplane by his own testimony at a value of $13,000. He received 24,850 shares of stock of the Merry Lake Development Company and under the testimony of the selling price of the lots in question he would be adequately compensated for what work and monies he advanced. The fact that he chose to pledge these shares of stock to the bank to secure the payment of a private loan of only $14,000, is not indicative of the actual value of the shares so pledged he cannot now complain because this action was his own doing on a private loan and not concerned with the operation of the corporation. The defendant did not offer sufficient definitive proof of what income he did receive throughout the course of his connection with the plaintiffs to allow the court to make a dollar and cents accounting but under the general evidence received the court finds he was adequately compensated. A judgment will therefore enter rescinding the agreements between the parties and terminating all of defendant's right in the agreements."

Additionally, in determining the issue of *status quo,* the court took into consideration the $45,000 promissory note payable to the defendant:

"In attempting to place the defendant *in statu quo* upon the scanty accounting evidence provided the court, the court considered that this note paid the defendant in part for the expenditures of money, time and use of machinery to accomplish the improvements which were, indeed made. For that rea-

son the court declines to issue a judgment cancelling this instrument."

From a review of the record, we cannot conclude that the trial court's finding of fact that the defendant had been returned to the *status quo* was clearly erroneous. GCR 1963, 517.1.

Defendant's final issue on appeal relates to the sale of stock by the bank to the plaintiffs. The bank, which was not joined as a party, held the stock which the defendant had pledged to the bank as security for a personal loan. Upon the defendant's default on the personal loan, the bank, in a private sale, sold the stock to the plaintiffs. Defendant claims that he should be allowed to redeem the stock. We disagree.

The sale of the pledged stock is governed by MCLA § 440.9504 (Stat Ann 1964 Rev § 19.9504), which provides, in part:

"A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing.

\*  \*  \*

"(4) When collateral is disposed of by a secured party after default, the disposition transfers to a purchaser for value all of the debtor's rights therein, discharges the security interest under which it is made and any security interest or lien subordinate thereto. The purchaser takes free of all such rights and interests even though the secured party fails to comply with the requirements of this part or of any judicial proceedings

"(a) in the case of a public sale, if the purchaser has no knowledge of any defects in the sale and if he

does not buy in collusion with the secured party, other bidders or the person conducting the sale; or
  "(b) in any other case, if the purchaser acts in good faith."

The plaintiffs purchased the stock for value from the secured party (bank) in a private sale. Therefore, under (4)(b) the plaintiffs take free of all claims if they purchased in good faith. Although the defendant failed to allege bad faith in his counterclaim, the trial court considered the issue, and found as a matter of fact that the plaintiffs' purchase had been made in good faith. A review of the record supports this conclusion. Since the plaintiffs purchased the stock in good faith, they took the stock free of any claims of the defendant. The defendant's remedy, if any, is against the secured party.

Judgment affirmed. Costs to appellees.

All concurred.